CUMBERLAND G. WHITE, Respondent, *v.* ALGERNON ' S. BAXTER, Appellant.

Where one, acting on the faith of a promise, performs the condition upon which the promise was made, the promise attaches to the consideration so performed and renders the promisor liable.

Where a party engaged in a business transaction with another, is induced to resist a demand supposed to be unjust, made by the opposite party, by a promise to indemnify him against any loss,made by a third person who conceives himself interested, under circumstances where a compliance would involve no permanent loss, while the resistance entails great damage, the promise is for a good consideration, and may be enforced.

The fact that the promisor has no actual interest, and is not in fact benefited by such resistance, does not make the promise void ; injury to the promisee is a good consideration.

Plaintiff, who was a member of "The Open Board of Stock Brokers" in the city of New York, sold on account of defendant certain stock deliverable at any time within the year. By the rules of the board, in case of such sales, either party had the right to call upon the other for margins to meet the fluctuation of the market ; an arbitration committee was provided for the settlement of differences, and members in default were suspended from the privileges of the board. The vendees called for a margin, whereupon defendant promised that, if plaintiff would not furnish the margin or appear before the committee, he would protect him from all loss, and, in case of plaintiff's suspension, would pay him at a specified rate for loss of business. Plaintiff thereupon refused to furnish the margin or to appear before the committee when summoned, and in consequence he was suspended. In an action upon the agreement, *held*, that it was supported by a sufficient consideration; and that defendant was. liable.

(Argued October 8, 1877 ; decided November 20, 1877.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, affirming a judgment in favor of plaintiff entered upon a verdict.

This action was brought upon an alleged contract of indemnity.

Plaintiff's evidence tended to establish the following facts: That the Open Board of Stock Brokers of the city of New York, of which he was a member, was a voluntary association of stock brokers, who had signed and agreed to be bound by its constitution and by-laws. These provided, among other things that either party to a time contract might call for a mutual deposit of ten per cent., and when the market changed either way, so as to reduce the margin of said deposit below five per cent., either party might call for a sufficient deposit to restore the ten per cent. If either party failed to comply with a demand made in accordance with this rule, the other party had the option to cancel, close, or continue the contract. The party not in default, after notice, was authorized to employ an officer of the board to buy or sell for account of the party in default, etc. An arbitration committee were authorized to determine all matters of difference between members. Defaults were to be reported, and the officers were authorized to suspend.

At the defendant's request plaintiff sold to Currie, Martin & Co. 1,000 shares of Hudson River Railroad stock at 128 per cent., deliverable at seller's option any time during the year 1867. In April, 1867, the Hudson River Railroad Company doubled its capital stock, agreeing to give every stockholder, on April 10th, 1867, an amount of new stock equal to that then held by him, upon the payment of 50 per cent. of its par value. On April 10th, Currie, Martin & Co. demanded of the plaintiff that he should subscribe for the additional stock. Plaintiff showed this notice to defendant, who said that the purchasers were not entitled to the stock, and did not instruct plaintiff to subscribe. This issue of new stock was called by the Open Board of Brokers a dividend, and thereafter the stock was sold ex-dividend. The stock, as thus increased,

commanded at first a much lower price than old stock had done, but it advanced steadily, until on September 5th, 1867, the price was about 127 per cent. On that day Currie, Martin & Co., who had repeatedly called for margins before, which had been deposited to the extent of $55,000 on each side, called for a further deposit of $10,000. Plaintiff notified defendant of this call, and defendant declined to comply with it. Plaintiff then reminded defendant that he, plaintiff, was liable to be suspended by the board, and to be deprived of all his business. Whereupon defendant said that if plaintiff would not put up any margin, or appear before the arbitration committee of the Open Board, when summoned to do so by Currie, Martin & Co., defendant would protect him against all loss which should ensue to him from such refusal; and, if he was suspended, would pay him during the time of his suspension at a rate equal to plaintiff's average business for the previous year, with ten per cent added thereto. Thereupon plaintiff refused to put up any margins, and refused to appear before the arbitration committee when summoned. Currie, Martin & Co. then treated the contract as broken, directed a purchase of 2,000 shares of stock on the plaintiff's account, caused plaintiff to be suspended from the board, and summoned him to appear before the arbitration committee, which he refused to do. Whereupon the arbitration committee awarded $66,000 against plaintiff upon the contract, and he was excluded from the board. Plaintiff continued suspended and deprived of all privileges of the board from September, 1869, to the entire destruction of his business.

When the plaintiff rested, and at the close of the evidence, defendant's counsel moved to dismiss the complaint, which was denied, and defendant excepted.

*John L. Hill*, for appellant. The appellant's promise was for simple indemnity, unmixed with any service or benefit to him, and was therefore void. (2 Kean's Com., 631; 1 Pars. on Con., 437; *Converse* v. *Kellogg*, 7 Barb., 590, 598;

*Halliday* v. *Hart,* 30 N. Y., 478; *Morey* v. *Town of New-fane,* 8 Barb., 645; *L'Amoreaux* v. *Gould,* 7 N. Y., 349; *Geer* v. *Archer,* 2 Barb., 424; *Silvernail* v. *Cole,* 12 id., 685; *Taylor* v. *Bates,* 5 Cow., 376; *Post* v. *Doremus,* 60 N. Y., 362; *Smith* v. *Ware,* 13 J. R., 257.) It was void for want of mutuality. (*U. & S. R. R. Co.* v. *Brinckerhoff,* 21 Wend., 139; *Livingston* v. *Rogers,* 1 Cai., 585; 3 D. & E., 653; Hob., 88; 4 J. R., 235; 7 id., 87; 3 T. R., 148, 653; 9 Wend., 336.)

*Thomas G. Shearman,* for respondent. Plaintiff, having performed the conditions upon which defendant's promise was made, it was binding. (*Willetts* v. *Sun Ins. Co.,* 45 N. Y., 45; *L'Amoreaux* v. *Gould,* 7 id., 349; *Sands* v. *Crooke,* 46 id., 564.) The contract was not void for want of consideration. (*Sands* v. *Crooke,* 45 N. Y., 564; *Decker* v. *Judson,* 16 id., 449; *Waydell* v. *Leur,* 3 Den., 410; *Hilliard* v. *Austin,* 17 Barb., 141; *Smith* v. *Weed,* 20 Wend., 184; *Smith* v. *Algar,* 1 B. & Ad., 603; *Violett* v. *Patten,* 5 Cranch, 142, 150; *Chapin* v. *Lapham,* 20 Pick., 467; *Townsley* v. *Sumrall,* 2 Pet., 170; *Lacey* v. *Hill* [L. R.], 18 Eq., 132; *Roberts* v. *Smith,* 2 H. & N., 213; *Adamson* v. *Jarvis,* 4 Bing., 66; *Castle* v. *Noyes,* 14 N. Y., 332; *Howe* v. *Buff., etc., R. R. Co.,* 37 id., 297; *Powell* v. *Newburgh,* 19 J. R., 284; Story on Ag., §§ 335–340.)

RAPALLO, J. We are of opinion that the agreement testified to by the plaintiff and found by the jury, was supported by a sufficient consideration. When the plaintiff was called upon by Currie, Martin & Co. for the deposit of $10,000, it was an open, and perhaps doubtful, question whether they had a right to make the call. The president of the board and the arbitration committee, appear by their acts to have been of opinion that Currie, Martin & Co. had such right. The defendant deemed that they had not. The plaintiff, however, by refusing to make the deposit, incurred the risk of suspension; and for his own protection against that risk,

which, as shown by the evidence, involved a loss to him of more than the $10,000, would have had the right to make the deposit. If it should ultimately have been determined that the call was rightfully made, the defendant would have been bound to reimburse the plaintiff. If determined otherwise, the plaintiff could have obtained a return of the money. In either event, he would have escaped the loss arising from his suspension. In this state of affairs, the defendant, according to the finding of the jury, requested the plaintiff not to make the deposit, and promised the plaintiff that if he would not make it, nor appear before the arbitration committee, when summoned to do so by Currie, Martin & Co., he (the defendant) would protect the plaintiff against all loss which should ensue to him from such refusal; and if he was suspended, would pay him during the time of his suspension from the board, at a rate equal to the defendant's average business for the previous year, with ten per cent. added thereto. Upon this promise being given, the plaintiff refused to put up any margin, and was thereupon suspended from the board by the president, and was duly summoned to appear before the arbitration committee, which he refused to do. He thus performed his part of the agreement, and in consequence thereof remained suspended, and lost his ordinary business for a period of about twenty months.

Irrespective of the question, whether the defendant was legally bound to put up the margin demanded, or whether he might lawfully have instructed the plaintiff not to put it up for his account, the fact that he by his promise induced the plaintiff to forego the steps which he might have taken for his own protection, and thus to incur a loss, furnishes a good consideration for the promise. The defendant, doubtless, had good reasons for desiring to take his ground at that stage of the matter. The contract was a large one, and according to his construction of it, no margin was then demandable of him. According to the construction of Currie, Martin & Co., they had a right to demand a margin, for if they were entitled to the additional shares issued by the company, there was a

difference in their favor exceeding the amount already deposited in the trust company. The contract was in the name of the plaintiff. The defendant was the principal in the transaction, but was not disclosed. Any concession, therefore, which might be made by the plaintiff would affect the interest of the defendant as between him and Currie, Martin & Co. He may have been willing to assume the risk of any loss which the plaintiff might incur by setting at defiance the rules and usages of the board of brokers, in preference to allowing the plaintiff to protect his own position by submitting to them. But whatever may have been his reasons, if he by his promise induced the plaintiff to forego any steps which he had a right to take, and thereby caused him damage, that was a good consideration. It is claimed, on the part of the defendant, that the plaintiff would have had no right to have submitted the matter to arbitration contrary to the objection of the defendant, and, therefore, his forbearing, at the request of the defendant, to appear before the arbitrators, furnished no consideration for the promise. What the plaintiff might have done to save himself from suspension, without compromising the rights of the defendants, had he attended before the arbitration committee when summoned, does not appear, but it is not impossible that some course might have been taken to that end. It is not necessary, however, to pursue that inquiry, inasmuch as we think that the plaintiff clearly had the right to put up the margin for his own protection, and no right of the defendant would have been affected thereby, except that he would have been bound to reimburse the plaintiff, if it turned out that the deposit of the margin was rightfully demanded. The forbearance of the defendant to exercise that right was the cause of his suspension, and was sufficient to constitute a consideration for the defendant's promise.

The agreement was not void for want of mutuality. It is true that it does not appear that the plaintiff, simultaneously with the defendant's promise, agreed that he would not deposit the margin, or appear before the arbitration commit-

tee. But he performed what was demanded of him as the condition of defendant's promise, and that was sufficient. When one, acting on the faith of a promise, performs the condition upon which the promise was made, the promise attaches to the consideration so performed, and renders the promisor liable. After the promisor has had the benefit of the consideration for which he bargained, it is no defence to say that the promisee was not bound by the contract to do the act. (Addison on Contracts, 13, and cases cited; 1 Parsons on Contracts, 451; *Sands* v. *Crooke*, 46 N. Y., 564, 570.)

The appellant contends that the impropriety of the call of Currie, Martin & Co. was clear beyond all doubt, and he refers to the decision of the case of *Currie* v. *White* as establishing this proposition. It is true, that by that decision, the defendant was fortunate enough to escape the large loss for which he was liable on the construction of the contract claimed by Currie, Martin & Co., through their inadvertence in not tendering the funds to pay for the additional stock. But the defendant's construction of that contract, on the basis of which he entered into the speculation, and claimed that a delivery of 1,000 shares of the watered stock would be a compliance with his contract under all circumstances, was not sustained by that decision. That point was the main subject of controversy between them, and had Currie, Martin & Co. taken the proper steps to obtain the benefits to which the contract entitled them, the call would have been proper. The defect in their manner of proceeding was developed in the subsequent litigation, but was not pointed out or insisted upon at the time. Both parties were mistaken in respect to their rights, and it was a case where prudence would have dictated to the plaintiff to make the deposit and avoid all risk of suspension. But the appellant contends that a contract to indemnify against a neglect to exercise ordinary prudence is contrary to law. I know of no such principle as applicable to a case like the present. The prudence which might have been exercised in the present case was that of submitting, temporarily, to a demand supposed

to be unjust, but compliance with which involved no permanent loss, rather than resisting it under such circumstances that great damage would ensue. In such a case I see no illegality in a contract by a third party, who conceives himself interested in having the demand resisted, agreeing to indemnify the person upon whom the demand is made, against the loss arising from such resistance. The illustrations given on the argument are those of threatened injury to the person, or acts of violence, in which considerations of public policy may intervene, but no such considerations enter into the present case. It is further claimed that unless the the indemnitor has an actual interest in having the demand resisted, or unless such resistance is in fact a benefit to him, his promise is *nudum pactum.* This proposition cannot be sustained. Injury to the promisee is a good consideration, even in the absence of benefit to the promisor. It cannot be supposed that the defendant would have made the agreement in question, unless be believed that it would benefit him in some way. Of this he was the sole judge, and the validity of the contract does not depend upon the correctness of his judgment in that respect; especially after the plaintiff had sustained the contemplated damages by performance on his part.

The judgment should be affirmed.

All concur, except FOLGER and MILLER, JJ., absent.

Judgment affirmed.