LEWIS ROBERTS, APPELLANT, *v.* EDWARD B. COBB, AS EXECUTOR, ETC., OF ABBY C. BARKER, DECEASED, RESPONDENT.

*Promissory note — what is a sufficient consideration therefor — promise to contribute to pay off a church debt if others will do so — when enforceable.*

The defendant's testatrix, an aged and infirm woman, was a member of the First Baptist Church at Tarrytown. She contributed to the support of the church and had given it a legacy of $2,000 by her will. A new church was about to be dedicated. It was subject to a mortgage of $15,000. The pastor called upon her to see if she would contribute to pay off this debt. She first promised, conditionally, to give $5,000, but subsequently, by the advice of a friend, declined to do so, but said that if the pastor would make an effort to gain subscriptions enough to raise the whole debt she would be willing to contribute $2,500 in cash. The pastor thereafter succeeded in procuring subscriptions and pledges for the remainder of the debt. He then called upon testatrix, who said that she was sorry she could not fulfill her promise to pay in cash but that she would be willing to give a note for the amount which she would take up. She accordingly gave the note and delivered it to the pastor, who delivered it to the trustees of the church. Five hundred dollars was subsequently paid upon it. Thereafter it was indorsed and transferred to the plaintiff to secure a loan of $2,000, which he made to the trustees, who used the money in paying off the debt.

*Held,* that the note was supported by a good and sufficient consideration; that the plaintiff had a good title thereto and was entitled to recover.

APPEAL from a judgment in favor of the defendant, entered upon the verdict of a jury directed by the court, and from an order denying a motion for a new trial made upon the minutes of the justice before whom the action was tried.

The action was brought upon a promissory note given by the defendant's testatrix, whereby she promised to pay to the trustees of the First Baptist Church of Tarrytown $2,500, at or before her demise, with interest semi-annually.

The defenses were that the note was without consideration and

that it was procured by undue influence, fraud and misrepresenta-
tion, and that the plaintiff had knowledge of those facts when he
took the note.

*Henry C. Griffin*, for the appellant.

*William A. Beach*, for the respondent.

PRATT, J. :

I think this judgment should be reversed. Two questions were
litigated on the trial — one of fact the other of law. The question
of fact was whether or not the note in suit was the voluntary act
of the maker, if she was in fit condition of mind to be bound by
her act.

The question of law was whether or not there was any considera-
tion for the note. Upon the question of fact there was evidence
showing that Mrs. Barker, the maker of the note, was aged and
infirm, afflicted with partial blindness and curvature of the spine,
she was very nervous and easily excited. She was a member of the
First Baptist Church of Tarrytown, having, as she expressed it, a
deep sense of personal unworthiness, but, withal, was intelligent, of
unquestionable pecuniary ability and fairly disposed to contribute
the sum ($2,500) specified in the instrument. She had already con-
tributed toward the church expenses in several ways.

The church edifice had been erected and was about to be dedi-
cated. It was subject to a mortgage of $15,000.

The old lady had made her will in which she had provided a
legacy of $2,000 for her church. The time for dedication of the
church was approaching, and with it the natural desire among its
officers and friends to relieve it from debt. The pastor called upon
Mrs. Barker and among other things mentioned the subject of her
making some contribution.

It seems to have been expected that she could or would contrib-
ute about $5,000. She declared that she was able to give this sum,
and would do so if Mr. Cobb, her business adviser, would approve
of it.

She subsequently informed the pastor that Mr. Cobb had advised
that she should not do so. The evidence is not wholly clear as to
the time, but it is fairly apparent that at one of the interviews she
promised to contribute $2,500 in cash, and said that she did no

know whether she could give the $2,500, besides $2,000 in her will or not; but that if she could not, she would destroy her will and make a new one. During these negotiations she was informed that the whole mortgage debt was $15,000.

She said that she wanted to see the whole debt paid, and that *if the pastor would make an effort* to gain subscriptions enough to *raise that debt* in any way, she would be willing to give $2,500 and would contribute in cash towards it.

The pastor said that he would make the effort, and that with her assistance he thought the debt could be raised. Up to this time the pastor had made no definite effort to raise the amount of the debt. Thereafter the pastor made effort to procure the balance of the $15,000, and succeeded in obtaining the pledge of various persons of the requisite amount. He thereupon called on Mrs. Barker again and informed her of the results of his efforts. She said that she was sorry she could not fulfill her previous promises to give $2,500 *in cash*, but that she would do something towards it and would be willing to give a note which she would take up. This was but a few days before the note was signed.

The pastor subsequently called on her, having previously prepared the instrument at her request, intimated his expectation that she should sign it. She went up stairs, procured a pen, signed the note, and delivered it to the pastor, who thereupon delivered it to the trustees of the church. Subsequently $500 was paid upon the note to the trustees. Thereafter the trustees borrowed $2,000 in cash from the plaintiff, and having indorsed the note transferred it to him as collateral to the loan. They applied this money towards, and with other moneys thus raised, paid off the debt of the church.

Speaking now with respect to the question of fact, to wit, that the note was obtained by fraud or undue influence, it would seem quite clear that there was no such degree of evidence as to warrant or justify the court in finding either fraud, undue influence or misunderstanding on Mrs. Barker's part. On the contrary, however, it is clear that she loved her church and sincerely and intelligently united with its friends in desiring to see it free from debt. Indeed she had already determined to bequeath $2,000. And now the practical question was how to carry this out. Should she increase the sum to $2,500 and pay it in cash during her lifetime, or con-

tribute this sum now and also leave $2,000 legacy to be paid after her death. I fail to find anything in this evidence indicating the slightest fraud, imposition, undue influence or misunderstanding.

Counsel *seem* to have united in the view that the only questions in the case were for the court. If this was the fact, the court was justified in disposing of the case without the verdict of the jury. (*Dillon* v. *Cockcroft*, 90 N. Y., 649.) But I do not think the evidence justified the inference or finding of fraud or undue influence upon or misapprehension by Mrs. Barker. It is not impossible, however, that the whole case was disposed of at the circuit upon the question of the consideration for and want of title to the note. I think that, in either view, the court erred in its disposition of the case.

As I read the evidence, this lady had a common interest with the members and friends of the church society in clearing up its indebtedness. The prosperity of the church largely depended upon this result. If freed from debt its annual expenses would be decreased. Her contributions, either directly for the purpose, or indirectly through its pew rents, might be thus decreased in the future. Its charitable demands upon its members might be either lessened or its income might be applied in other channels of christian work. This lady was apprised of the proposed effort to raise this debt. She said to its pastor, in substance, I will unite in this effort; if you will make the effort I will contribute. If she regarded the pastor as the representative of the trustees, she then said to them, in substance, I promise to pay $2,500 cash toward a fund to pay off this debt *if you* will raise the balance. If she regarded the pastor as speaking wholly for himself, she said the same thing to him. If she regarded the pastor as her representative to initiate this work, her statement was equivalent to this: Go make this effort to raise $12,500 to be applied towards the payment of this debt; tell others that if they will raise $12,500, I will pay $2,500, the balance of a fund sufficient for, and to be applied to that end; procure their promises upon the faith of my promises.

He then and there accepted her offer, undertook the effort, promised to do the work in consideration of her promise, and thus a valid engagement arose. It was, perhaps, unnecessary the pastor should have accepted the offer, for he acted upon it at once. (*White*

v. *Baxter*, 71 N.Y., 254.) He proposed to render his services to raise the balance if she would promise pay the $2,500. She accepted the offer, and made the promise. It was a promise for a promise; a promise made to him for the benefit of the church, and its proper representatives might doubtless enforce the performance of her obligation in their behalf, under *Lawrence* v. *Fox.*

In an other view it was an authority to the pastor to pledge her promise to every other person who would contribute.

The fund when raised by him would have been a trust for the benefit of the church to be applied to a specific purpose, and either the church or any one of the contributors of the fund could have invoked the equity power of this court to enforce the trust. Since *White* v. *Baxter*, I fail to see why this would not have been a valid engagement. There was the effort to be made either by the pastor or the church. It is said that their effort was no benefit to the lady. *White* v. *Baxter* answers that that element need not necessarily appear, saying " it cannot be supposed that the defendant would have made the agreement in question unless he believed it would benefit him in some way. Of this he was the sole judge, and the validity of the contract does not depend on the correctness of his judgment in this respect." (71 N. Y., 261.) *Lindell* v. *Rokes* (21 Am., 395 ; S. C., 60 Mo., 249) is on the same point. But we have already indicated that there were benefits to be derived by this good woman from this promise, in the gratification of her spirit of charity, her desire for the greater usefulness of the church untrammeled by debt, its power to devote its resources more largely to other fields of christian work, the lessening of her own moral obligations, contributing through pew rents and other ways towards the payment of interest on the debt, her desire to secure the $12,500 from other sources for the same purpose, the interest which might be stimulated among others for the good of the church and its work, and other desires which a woman in her condition might well entertain for the success of her chosen church.

Who shall appraise these considerations ? Who shall impeach the value which the christian may place upon such considerations ?

It follows, of course, that if there was a valid original promise to pay $2,500 on condition that the remaining $12,500 should be raised, the performance of that engagement creates a liability to

pay the former sum to somebody, either to the pastor for the benefit of the church, or to the church directly. Hence of course the note was a mere payment or performance of that obligation. The element of a gift is not in this case. The note was in no proper sense a gift, nor was it given or accepted upon that theory. There was an antecedent contract obligation on her part. She owed $2,500 and gave her note to pay it.

The remaining point, the plaintiff's right to recover, is too clear to require extended consideration. The proof shows that he took this note as collateral to a present loan to the church of the amount unpaid upon it ($2,000).

The plaintiff advanced this sum to be specially applied to the extinguishment of the mortgage debt. The note was thus appropriated to the purpose for which it had been given.

The judgment should be reversed with costs to the appellant, and since the case was submitted as involving questions of law only (*infra*), the plaintiff should have judgment absolute for the amount of the note, interest and costs.

Present — BARNARD, P. J., and PRATT, J.; DYKMAN, J., not sitting.

Judgment and order denying new trial reversed, and new trial granted, costs to abide event.