[No. 1291.]

TEMPLIN V. HOBSON.

CONTRACTS—CONSIDERATION.

An agreement was made by H. and his associates with T. whereby it was agreed that T. should prospect for and locate placer mines, and H. and his associates to pay T.'s expenses and such sums as were necessary to expend in making the locations. If the enterprise was a failure T. was to charge up only his expenses. After T. had been at work some time he wrote H. that he understood he and his associates were annoyed by the delay and that if they were dissatisfied he would return the full amount advanced to make the locations.. *Held* that this promise was without consideration and upon mutual abandonment of the enterprise H. and his associates were only entitled to recover of the amount advanced what was left in T.'s hands after paying his expenses.

*Appeal from the District Court of Arapahoe County.*

Messrs. TELLER, ORAHOOD & MORGAN and CLAYTON C. DORSEY, for appellant.

Messrs. JACKSON & WILSON, for appellee.

BISSELL, J., delivered the opinion of the court.

A prospecting agreement was made by Hobson and his associates with Templin, who was supposed to have some technical skill and experience in such matters, and a little information about the locality where the prospecting was to be done. Hobson and his friends apparently looked for

immediate success and not wholly approving Templin's efforts soon wanted to abandon the enterprise. This led to a dis-agreement and the suit which we are considering. It was tried without a jury. While the judge did not make technical findings of fact, he rendered an opinion which states the facts as he deemed them established. We quite agree with his opinion and shall adopt them as the basis of our decision. We do not at all disagree with the trial court save as to one of his legal conclusions. This will simply necessitate a modification of the judgment. Stating the facts as we have gathered them, the agreement was in one sense in parol, but in another was fully exhibited by written memoranda. The parties came together in the early part of October, 1891, and discussed the chances of locating placer claims in Lemhi county, Idaho. Whether the exact locality was agreed on is not clear. The contract obligated the prospector to go to that locality, and find and locate placer claims. His expenses were to be paid by Hobson and his associates. They gave a written power to Templin, authorizing him to act in their names for this purpose. Templin was requested to state what he intended to do, and he made a written memorandum on the back of the power containing the several items of his part of the engagement, which in general were, that seven men should go in and pay Hobson $350 apiece, subject to Templin's sight draft, and the money thus deposited might be used by him to pay his expenses and such expenditures as were essential to making the locations. In case the enterprise proved a failure Templin was only to charge up his expenses, and in the event of success, complete or partial, certain other obligations were assumed with which we are not concerned. The court found that this was the agreement and that the money was deposited in the bank and the conditions and terms of the memorandum as Templin had jotted them down accepted. Templin proceeded to carry out the agreement, went to Idaho, and put in his time and labor and spent considerable money in performing his part of the contract. When he started he drew a draft for $450 on Mr. Hobson which was

paid, and this money was a part of the fund thus contributed,
Owing to the snowy weather at that late season of the year
Templin found that some of the ground which he wanted to
take up, would not be available until after the 1st of January.
He then returned to Colorado. About this time the atten-
tion of other parties was drawn to the scheme and while some
talk was had with them about it, no arrangements were made
between them and Templin or between them and Hobson
and his friends. The contributors were not entirely satisfied
with the situation and on Templin's return they had some
discussion about it. Templin wrote them a letter suggesting
that others would like to go into the combination, and added
as a postscript, that if any of the parties were dissatisfied, he
was willing to hand them his check for the amount invested,
provided he got a deed of whatever interest the dissenting
one might have acquired. Nothing was done under this
letter. On the 25th of February, after a talk with one of the
parties, Templin wrote another letter to Hobson in which he
substantially stated that from the conversation he understood
they were greatly annoyed by the delay and that if any one
or all of the parties were dissatisfied, they could wire him at
Dillon, to which point he had returned in the further pros-
ecution of the scheme, and he would return the full amount
advanced to make the locations. At the trial the case turned
on the construction of this letter and on its legal effect. It
will be remembered that up to that time, Templin had fairly
and faithfully, so far as the record shows, done what he
agreed to do and the money which he had expended was a
part of that placed in his hands as their agent for this pur-
pose. Hobson therefore wrote to Templin that the parties
had come together, concluded to accept his arrangement, and
asked him to remit what he had received. On the back of
this letter, Templin indorsed a reply that the letter had been
received, and he would figure up his expenses and remit the
balance. This proposition was not accepted but Hobson
immediately responded that according to the terms of the
letter, which they had accepted, he was bound to return all

that he had obtained, pay all the expenses himself, and relieve them from any responsibility or outlay in the matter. This Templin declined to do, and when he returned he offered to pay the balance remaining in his hands. This the parties declined to take and brought suit for the $450.

The only question presented is as to the legal effect of the letter; whether the circumstances and antecedent transactions of the parties made this contract a binding agreement to return the $450, and whether there was a consideration for it sufficient to bind Templin and give the plaintiff a cause of action for the money. We shall dismiss all other questions, and leave out of the discussion the question of the hardship or the inequitable character of the arrangement, and put our decision on the naked proposition that unless a good consideration was established, the suit for the $450 cannot be maintained. We are quite of the opinion that the mutual abandonment of the enterprise gave the parties the right to recover the unexpended balance. This Templin offered to pay, and he still concedes that sum to be due. The balance he contests. There is a very grave question whether the complaint states a cause of action. The contract was a prospecting agreement obligating the contributors to put up the money necessary to carry out the enterprise. There is no allegation that Templin failed to begin the performance of his part of the agreement, or that he ever abandoned it, or in any particular failed to do what he had agreed to do, and up to the time of the correspondence in February he had fully performed. The money which he expended he spent as the agent of the parties under express authority conferred on him to that end, and under no circumstances could he be called on to return it unless subsequently he made an agreement which would bind him to repay. It is true the complaint alleges that what he did was fraudulently done. But this averment is of no value as a matter of pleading because the facts constituting the fraud were not set up, nor were they at any time made the subject of proof. This consideration may therefore be dismissed. The plaintiff attempts to set

up a consideration by stating that in consideration of a release from his original undertaking Templin undertook and agreed on demand to repay. This release however is not put in evidence, nor is there anything alleged or aught proven which establishes that the release was agreed to be made at the time of the promise or that it was ever executed by the plaintiff and his associates. But if we should concede that there was any such agreement, we are unable to assent to the deduction without other proof than was exhibited that the agreement to release would of itself make a good consideration. What is a good consideration is tolerably well settled, and it has been many times expressed by the authorities as "a thing which must be of advantage or gain to him who makes the promise, or an injury to him to whom the promise is made." This is the general expression in which all the authorities concur when they attempt to state its essentials. 1 Parsons on Contracts (6th ed.), p. 430; *White v. Baxter*, 71 N. Y. 254; *Wennel v. Adney*, 3 Bos. & Pull. 249; *Freeman v. Robinson*, 38 N. J. Law, 383; *Cook v. Bradley*, 7 Conn. 57; *Allen v. Bryson*, 67 Ia. 591.

Tested by this simple principle nothing moved to Templin's advantage at the time he offered to return the money, nor would the execution of the contract disadvantage the other parties to the agreement. It was a naked promise on Templin's part to return the money, and manifestly he ought not be held to the performance of his promise unless there was some countervailing contract which would be an advantage to him or the plaintiff would suffer by reason of his failure. The very inequitable nature of the contract would naturally lead us to construe it most strongly against Hobson, because up to the time of the attempted abandonment, Templin had done what he had contracted to do, and so far as we are able to see had put in his time and his labor without any other possible gain except that which might come in the future. The money which he disbursed he spent as the agent of the plaintiff in accordance with exact instructions. In no event could he ever become liable to return it unless

the plaintiff was able to show that it had been expended in some manner not permitted by the contract. There was no attempt to make any such proof and we ought not, therefore, to adjudge Templin liable to return it except on an adequate and sufficient consideration. We have been cited by the appellee to some authorities, notably, *Perry v. Buckman*, 33 Vt. 7; *Weld v. Nichols*, 17 Pick. 538; in support of their contention that an agreement to release a party from an antecedent contract will, because of the agreement for mutual releases, if they be executed, furnish the one for the other, a sufficient consideration. This may sometimes be true and is probably true as applied to the facts presented by those cases. When examined however, it will be observed that there was a distinct and positive gain to the party who was released. He was no longer liable to pay in the one case the further sums which would become due under the contract of sale, and in the other, a release from what was shown to have been a disadvantageous contract which had cost the party released considerable money, and resulted in no benefit to him. We are quite ready to admit that wherever a party is released from a contract which is shown to be expensive and onerous, and where he is under obligations to continue in the future to execute this burdensome agreement, the release might be adjudged a good consideration for the promise. There is no such element in this case. The contract was not shown to be burdensome or disadvantageous, nor did it at all appear from the testimony that it would not be of value to Templin to carry it out. Where a party seeks, as in this case, to recover money which the other is under no equitable or legal obligation to pay, it is not going too far to hold that it is incumbent on him to show something beside a naked release as a consideration for the agreement. The plaintiffs were not entitled to the money, Templin never owed it, and he never could become their debtor unless he entered into a contract therefor on an adequate consideration. We are unable to find one in this letter regardless of its exact terms and regardless of the ques-

tion of its proper construction. There was some evidence given by Templin to the effect that it was his purpose simply to offer to return the unexpended balance and it is quite possible to build up an argument in support of his position from the phraseology of the letter. This however is more of a refined discussion about the meaning of words and terms than an exact argument legitimately drawn from the language itself. We therefore prefer to put our opinion directly on the proposition that there was no proof of a consideration for the agreement.

When the judgment was originally entered it was for $601.30 being for the $450 with interest from December 1, 1895, to the date of the judgment. The plaintiffs were satisfied that they were not entitled to recover the interest and remitted everything but the amount of the original advance, $450. In this they were manifestly right because it was not an action for money due under a contract, nor was it an express or implied agreement to pay on which interest could probably be computed. Since we are convinced that the judgment was erroneous in amount only, we have a right to modify it and affirm it as modified. Under this authority we shall reduce the judgment to $135.15 which is the amount which remained in Templin's hands at the time suit was brought. Had the defendant made a tender of this sum, he would have been entitled to recover his costs. Failing to do this, and failing to keep his tender good he cannot escape liability for the costs of the suit in the court below and the judgment of this court, therefore, will be, that the appellee have judgment for $135.15 with the costs of the court below, and the appellant Templin recover his costs in this court.

The judgment will therefore, as suggested, be modified and affirmed.

*Modified and affirmed.*