## HARRIS *v.* THE AMERICAN BIBLE SOCIETY.

December, 1867.

Reversing in part 46 *Barb.* 470.

A corporation chartered for the purpose of receiving and holding in trust property committed to them by bequest, &c., in trust for an unincorporated association, with power to execute any trusts confided in them by such association, may take a fund bequeathed to them to be expended under the direction and for the appropriate uses of a committee of such association.—Per FULLERTON, J.

The provision of the *Laws of* 1860, 607,—that a testator leaving husband wife, child, or parent, shall not devise to benevolent, &c., societies more than one-half his estate, &c.,—is peremptory, and may be insisted on by any person who would derive a benefit therefrom, although not one of the relatives designated in the statute. And the one-half is to be computed with reference to the estate at the time of the testator's death.—Per FULLERTON, J.

Ellen Harris brought this action against Jeremiah Slaght

and others, the executors of Folkerd C. Sebring and his widow, and the American Bible Society, and three other corporations, asking that a partition of certain lands be made, the construction of a will, determined, and for general relief.

The facts material to the questions in this court were these:

Cornelius Sebring died before the enactment of the Revised Statutes, which dispensed with the necessity of words of inheritance to pass a fee. He left two sons and four daughters, and his will contained the following provision: "I give and bequeath my son Folkherd, 30 acres of land on which he now lives, * * * and one-sixth part of my personal property not otherwise disposed of." The land referred to was in this State.

Folkherd entered and enjoyed the land devised, until his death, in 1861. He died without issue, but leaving a widow, and left a will, by which, 1, he devised and bequeathed to her the use of all his property, real and personal, for life. 2. He directed that after her death it be sold, and the proceeds paid "to the following named charitable societies, in four equal portions—that is to say: I will and bequeath one fourth of all such proceeds to my executors in trust, to be paid over to the treasurer of the American Board of Commissioners for Foreign Missions, or the person or persons authorized by said board to receive the same, expressly for them, and to apply it to the charitable uses and purposes of said board.

"I further will and bequeath to my executors in trust another fourth part, &c., . . . . to be paid over by them to the trustees of the Presbyterian House, incorporated April 21, 1855, by the legislature of Pennsylvania, to be expended under the direction and for the appropriate uses of the Home Mission Committee of the General Assembly of the Presbyterian Church in the United States of America." The other two fourths he gave to the American Bible and Tract Societies.

The plaintiff was a surviving daughter of Cornelius Sebring, and brought this action, joining the other heirs of Cornelius, and the societies, and claimed that under the will of Cornelius, Folkherd took only a life estate; also, that the interest which vested in him as heir would not pass by his own will, because its dispositions were void by reason of the statute cited in the opinion, forbidding one leaving a family, &c., from devising

more than one-half his estate for benevolent, &c., purposes; and also, because of uncertainty, and because the societies were not competent to take.

The act of the legislature of Pennsylvania, referred to in the will, after reciting that the General Assembly of the Presbyterian Church had appointed John A. Brown and others named "Trustees of the Presbyterian House," and had recommended that an act of incorporation should be obtained, and should contain a general provision authorizing the said trustees to hold in trust for said assembly, any property committed to them by donations, bequests, or otherwise, created those persons and their successors a corporate body, by the name of the "Trustees of the Presbyterian House," with the usual powers.

Section 4 declared, " that the trustees hereby incorporated, and their successors, shall be subject to the direction of the said assembly and their successors, have full power to manage all funds, property and effects committed to their care, by gift, purchase, bequest or otherwise, and to execute any trusts confided to them by the said general assembly, as [or] their successors, in such manner as shall be deemed most advantageous, and not contrary to law or the intention of the donor or testator."

The judge before whom the cause was tried held that Folkherd took a fee under Cornelius' will; that only the widow could interpose the statute; and that the gift of proceeds to the societies must be deemed a gift of personalty, and that the societies were competent to take.    He accordingly dismissed the complaint.

*The supreme court,* at general term, on an appeal taken by the plaintiff, held: 1. That in the will of Cornelius,—by the introductory words, by the absence of a residuary clause, and by the gift of real and personal property in the same clause and by the same words, and by the existence in the same will of a devise of the homestead to another son, with a share of the personal estate, couched in the same language,—the testator's intent to pass a fee was apparent; citing Charter *v.* Otis, 41 *Barb.* 525. 2. That the gifts to the societies were of proceeds—that is, personalty, and not land, and that the direction as to the sale was valid as a power in trust; that the act of 1860 rested, not

on the protection to be given to families, but on public policy respecting corporations, and might be interposed by any party interested in the estate, and that therefore the bequests to the four societies were valid to the extent only of one-half of the property so bequeathed to each. The court accordingly decreed, that after the death of Folkherd's widow, the whole of his real and personal estate be converted into money, and after paying to the plaintiff, the executors, and the four corporations, their costs of this action, one-eighth part of the net proceeds be paid to each of the four corporations. And distribution of the residue of the proceeds was directed among the individual defendants who are descendants of Cornelius Sebring. (Reported as Harris v. Slaght, 46 Barb. 470.)

The plaintiff appealed from the adjudication on the construction of Cornelius' will, and that the Presbyterian House was entitled to take, and from the award of costs to the defendants.

The four corporations appealed from the adjudication that they could not take each one-fourth, and also from the direction concerning costs.

John E. Seely, for the plaintiff.

Samuel A. Foot, for the American Bible Society.

George A. Titus, for the American Tract Society.

FULLERTON, J.—[The remarks of the learned judge on the effect of the devise to Folkherd in the will of Cornelius, we omit, as the court did not concur in them.]

2. The beneficiaries contemplated by the third clause of Folkherd C. Sebring's will are plainly therein designated as four "societies." The ultimate and real beneficiary, under the direction to pay over to "the Trustees of the Presbyterian House," is not that corporate entity, nor the individual persons composing it, but some "society."

By turning to the Pennsylvania statute referred to by the will, and reading it as if incorporated with the will (21 N. Y. 330, 331), we find that the "society" for whose benefit this direction is given is the whole mass of persons constituting the

Presbyterian Church in this country, or their General Assembly, viewed as a continuous body, or a particular session of that assembly which met in Philadelphia in 1854, or a certain committee of such General Assembly, viewing the latter in one or other of the aspects just specified. The will gives this committee's title as " The Home Mission Committee."

None of these bodies are incorporated; and it may be assumed that a direct bequest to any of them, or to any individual for their use, in the general form in which they are referred to by this will as beneficiaries, would be void for uncertainty.

But it is further contended, that although the bequest is to a corporate body, it is still void because the beneficiaries are thus undefined, and are not themselves incorporated.

It is asserted that the corporation has no interest, and is a mere conduit-pipe, through which the money is to flow into the hands of the ultimate beneficiaries.

This is not exactly the fact. By the will, the fund is to be " expended " under the *direction* of the beneficiaries. This implies the very reverse of a simple payment over to the latter.

By the act, this corporation is to " manage " all funds thus coming to its hands. This, to be sure, must be done " subject to the direction of the general assembly, or their successors."

In both these respects the will and the act substantially correspond. The latter, it is true, enjoins upon the assembly the practice of issuing its directions to the corporation through a certain specified committee of its body; and perhaps it also requires the assembly to devote this portion of its funds to uses supervised by that same committee. The corporate body, however, is to be the managing and the disbursing trustee of the bequeathed fund.

As a corporate entity, it is to hold the custody thereof and the legal title thereto.

Both in respect to real and personal property, it is established doctrine, that a trustee to receive, manage, and disburse, or even with less powers, has the legal title, and is, in contemplation of law, the owner of the property. It must, however, be conceded that the corporate body, and the corporators, were without any actual right to any beneficial enjoyment; they merely sustain a burden for the enjoyment of the society refer-

Harris v. American Bible Society.

red to. But it seems to me that the absence of such right in the corporation, or its corporators, is not material; for such is the condition of most charitable corporations.

The beneficiaries of funds held by incorporated hospitals are persons not entitled to membership in the corporations. And it rarely happens that in such hospitals the corporate body, or any individual member thereof, has any beneficial interest. The fact appearing in this case that the corporation must, in all substantial respects, obey the orders of the unincorporated and fluctuating multitude, for whose use it was created, or the orders of the committee thereof, can have no influence on the validity of the bequest.

Ordinary corporate bodies having charge of the temporalities of our churches are very nearly in this condition; and if they were absolutely and entirely in it—that is to say, if the trustees were forbidden to disburse a dollar without asking the directions of a mass meeting of those who, for the time being, might chance to be attending worshippers—the corporate body would not the less satisfy the requisites of our law concerning gifts to charities, in the particulars now under consideration. The objections to the capacity of this corporation to receive the testator's intended bequest, seem to me, therefore, to be unfounded.

They originate in conceptions impracticably refined and subtle.

Such rigorous constructions are not adapted to the actual concerns of life. The cases cited have been examined, as also the learned and elaborate opinion of the present Chief Judge (DAVIES) in Downing v. Marshall (reported in 23 How. Pr. 10). The plaintiff virtually admits every proposition required to support the bequest to "The Presbyterian House," except what may be involved in the nice criticism referred to, and that is not, in my judgment, supported by anything found in these citations.

3. The act relating to wills (L. 1860, p. 607) enacts that "No person having a husband, wife child, or parent, shall by his or her last will and testament, devise or bequeath to any benevolent, charitable, literary, scientific, religious, or missionary societies, association, or corporation, in trust, or otherwise,

21

more than one-half part of his or her estate, after the payment of his or her debts (and such devise or bequest shall be valid to the extent of one-half, and no more)."

The testator left no relative or connection named in this act, except a wife; and she consented to the disposition.

The societies contend that the act was made exclusively for the benefit of the persons referred to by it, and that no others can insist upon the prohibition, or claim its enforcement.

The general term held, and I think, correctly, that the prohibition is peremptory, and may be insisted on by any person who would derive a benefit therefrom.

The language is absolute; and if the courts have power in any such case to judge concerning the probable motives of the legislature, and may imply, accordingly, an exception to the positive terms of a .statute (on which no opinion need now be expressed), I am unable to discover any safe ground for such a proceeding in this instance.

Consistently with this act, a testator, having the relatives and connections specified, may give half of his estate to a nephew or any remote collateral relative, or, indeed, to entire strangers, and give the other half to the societies described.

It is, therefore, quite clear that it was not designed to compel testators to provide for their families. If a man whose entire estate consisted in realty, and who had none of the relatives mentioned, and only a wife, should die without a will, his widow would only take a life estate in one-third of his lands.

Yet, in such a case the statute of 1860 avoids the devises which such a person might have made, to a much greater extent than is necessary to protect all benefit which the widow could possibly have derived from an intestacy.

The widow may have been barred of dower by a jointure. 1 R. S. 741, §§ 9, 10, 1 ed. She may have been incompetent to take from alienism; yet, in either of these cases, if the construction claimed be correct, her consent alone would give effect to a devise not otherwise sustainable.

So to hold would not be implying an exception from the nature and reason of the thing. 1 Johns. Cas. 131.

It would be repugnant to both, and violative of our plain duty, to administer the law as we find it written.

The reasons assigned by Judge T. A. JOHNSON in support of the judgment below on this point, are satisfactory and conclusive. Harris *v.* Slaght, 46 *Barb.* 470.

4. The enactment in question is, that no person shall " by will or testament give or bequeath " to any society of the classes named, " more than one-half part of his or her estate after payment of his or her debts."

As the parties concur, and perhaps, rightly, in construing this act as prohibiting dispositions to these purposes, by the same testator, which taken together, exceed one-half of his entire estate, I will assume that such is the law. No doubt it was the legislative intent.

The supreme court determined that the societies can take only one-half of the proceeds which may be realized on a sale of the estate at the widow's death.

On this a question arises whether the statute, in speaking of one-half of the testator's estate, is not to be regarded as referring to the estate left at the testator's death.

Upon the words and the reason of the thing, the affirmative is quite clear. No higher authority can be found; nor does a resort to precedents seem needful on a point so plain.

If a man leaving two infant children should give each an estate for life, with remainder in fee to his issue, should limit cross-remainders in default of issue, and make an ulterior disposition for a sale, and the payment of proceeds to charitable societies on failure of issue living at the survivor's death, the judgment below assumes that, on the occurrence of the latter contingency, the societies could only take one-half of the value at that time.

Nearly or quite a century might have elapsed, and, owing to depreciation or other causes, the proceeds might not amount to one-tenth of what was the value at the testator's death. Yet it is supposed that one-half of this diminished fund should go as upon an intestacy to the next of kin. I do not think so.

The Roman *lex falcidia* forbade a testator to give more in legacies than three-fourths of his effects; so that there must remain to the heir one-fourth. (*Justinian Inst.* book 2, c. 22 ; see Cooper's ed. p. 173 ; see the law itself in the Digest, lib. 35, tit. 2, l. 1.)

Like the act now under consideration, this law does not, in terms, specify any time for the valuation.

But, commenting upon it, the *Institute* speaks as follows:—

" The law *falcidia* looks to the quantity of his estate at the time of the death of the testator; and therefore, if he who is worth but an hundred aurei at his decease, bequeath them all in legacies, the legatees must suffer a defalcation; for they will be entitled to no advantage, although the inheritance, after the death of the testator, and before it is entered upon, should so increase by the acquisition of slaves, the children of female slaves, or the product of cattle, that after a full payment of the 100 aurei in legacies an entire fourth of the whole estate might remain to the heir; the legacies, notwithstanding, would still be liable to a deduction of one-fourth.

" On the contrary, if the same testator had bequeathed only 75 aurei, then, although, before the entrance of the heir, the estate should be so decreased by fire, shipwreck, or the loss of slaves, that its whole value should not be more than 75 aurei, or less, yet the legacies would still be due without defalcation.' (*Justinian Inst.* book 2, c. 22, § 2; see Cooper's ed. p. 174, and also the editor's note on this § 2, at page 533.)

In SANDER's *Institutes of Justinian* (p. 336, 3 ed. 1865), it is said that " the calculation under the *lex falcidia* was made at the time of the testator's death."

The subject is treated of to the same effect, and with great fullness and detail, by DOMAT (*Domat Civil Law,* part 2, book 4, title 3, § 1, articles 3706, 3707, 3708; see Boston ed. 1850, edited by CUSHING, vol. 2, 588).

When a testator disposes of his property in such a manner that one-half of the corpus can be severed from the other at his death, the administration under the statute of 1860 is very simple. But if (as he may) he devise it by way of successive estates, or interests, the task of distribution between his next of kin and the charitable societies to whom he has bequeathed in excess of his powers may be somewhat more difficult. Still it is not impracticable.

It should be adjudged that the four societies will not be entitled to receive a greater sum in the whole, from the proceeds of the sale directed by Folkerd C. Sebring's will than would be

sufficient, on a proper calculation, to pay and satisfy at that time a debt then yet remaining unpaid, which, at the testator's death, was equal in amount to the then value of one-half of the testator's estate, over and above his debts.

And also, if there should be any residue of such proceeds, the costs awarded in the court below be paid out of the same; and the balance thereof distributed to the next of kin of the said testator, in the proportions specified in the judgment of the general term.

With these modifications, the judgment appealed from should be affirmed.

These are my views of this case, and my brethren concur in them, with this exception:

They are of opinion that the case of Van Derzee *v.* Van Derzee, 36 *N. Y.* 231, controls, and requires a decision that Folkerd C. Sebring took a life estate only.

I am unable to acquiesce in that conclusion. But it follows that the judgment of the general term, so far as it holds that Folkerd took a fee, must be reversed; and that with the modifying adjudication above suggested, the judgment must be in all other respects affirmed.

None of the parties are to have costs on this appeal, and the proceedings are remitted to the supreme court, with directions to enter judgment accordingly.

HUNT, J., read a memorandum of opinion, to the effect that the will of Cornelius passed only a life estate, and in this a majority of the court concurred.

Judgment reversed, and judgment that Folkerd Sebring took only a life estate in the thirty acres mentioned, and that on his death the same descended as in case of the intestacy of his father to the heirs at law of his father. Action remitted for proceedings accordingly. No costs allowed on this appeal.