(65 App. Div. 192.)

## FRAZIER et al. v. HOGUET et al.

(Supreme Court, Appellate Division, First Department. November 8, 1901.)

**1. Wills—Rule against Perpetuities—Conditions.**
　　Where a testator devised property to his executors, to hold in trust during the lives of his wife and sister-in-law, and after their death to transfer to a certain person on condition that he purchase an annuity for testator's nephew, and, in case of such devisee's refusal so to do, to sell the property, purchase the annuity, and pay the balance to the devisee, such devise was not void because suspending the power of alienation for more than two lives in being.

**2. Same—Prudential Delays.**
　　Where testator devised property in trust during two lives in being, and afterwards in fee to a certain person on condition that he purchase an annuity, which was made a charge on the property until purchased, the will was not void because in conflict with the statute against perpetuities, since the necessary delay involved in the purchase of the annuity was merely prudential, not offending against the statute.

**3. Same—Bequest of Income in Perpetuity.**
　　Where testator devised the residue of his estate to the executors in trust to pay the income to testator's wife, and on her death bequeathing "the same" to a third person, forever, such clause did not violate the statute against perpetuities; "the same" referring to the property, and not the income.

**4. Same—Bequest to Charitable Society—Parties Entitled to Sue.**
　　Under Laws 1860, c. 360, § 1, providing that no person having a husband, wife, child, or parent shall bequeath more than one-half of his estate to any charitable or religious society, no relatives other than those named, or who would take through such as are named, are entitled to question the validity of a will violating the statute.

Appeal from special term, New York county.

Action by Annie Frazier and another against Robert J. Hoguet and Margaret Harnett, as executors of the will of Daniel Harnett, deceased, and others. From a judgment sustaining a demurrer to the complaint, plaintiffs appeal. Affirmed.

The action is brought to have declared void a will made by one Daniel Harnett, or, if it be found that the same or any of the provisions thereof are valid, then that such provisions may be construed, and the meaning thereof judicially determined. It is averred in the complaint that Daniel Harnett died about January 1, 1900, leaving a last will and testament which was duly probated, and on which letters testamentary were issued to the defendants Robert J. Hoguet and Margaret Harnett, who were named in said will as executors and trustees; that they duly qualified and entered upon the discharge of their duties as such; and that certain provisions of said will, which, it is averred, were made for the benefit of the Roman Catholic Church, are void on the ground that it is thus sought to dispose of more than one-half of the estate of the testator, contrary to the provisions of the statute (Laws 1860, c. 360). It is also averred that said will is void because by its terms and conditions the power of alienation of real estate is suspended for a longer period than two lives in being at the death of the testator, and that the ownership of personal property is also suspended for a period of more than two such lives, and that the residuary clause is also void because, as averred, no property is devised or bequeathed thereby to the residuary legatee and devisee, except the income of said residuary estate in perpetuity, which is contrary to the statute, and therefore the testator died intestate as to said residuary estate, and the plaintiffs are entitled to share therein. The testator left no descendants. His only heirs at law and next of kin are a sister, Johanna Shea, these plaintiffs, who are nieces, and the defendant John

Harnett, a nephew (if he be living). The defendant Margaret Harnett is the widow of testator. After directing the payment of debts and funeral and testamentary expenses, the testator bequeathed to his wife all his personal property absolutely, and then made provisions as follows:

"Third. I give, devise, and bequeath the stable known as 'Nos. 15, 17, and 19 East 30th Street,' and the house, No. 20 East 31st street, in the city of New York, to my executors, or such of them as shall take out letters testamentary on this, my will, or to such person or persons as shall administer my estate, and the survivor of them, in trust, for and during the lives of my wife, Margaret Harnett, and my sister-in-law, Anne Crilly, to receive the rents, income, and profits thereof, and apply and pay over the same in manner following, that is to say: To pay all taxes, assessments, water rents, insurance premiums, necessary repairs, and charges thereon, with the reservation or exception, however, that it is my will that my executors and trustees shall allow and permit my said wife, Margaret Harnett, and my sister-in-law, Anne Crilly, to use and occupy, free of rent, the house and lot, No. twenty (20) East Thirty-First street, for and during their lives and the survivor of them, and to pay over the balance of such rents, issues, and profits to and for the following uses and purposes, viz.: To pay over out of said net income the annual sum of one thousand dollars in gold, or its equivalent, by sight draft on Ireland, to my sister, Johanna Shea, now residing at Cleveraugh, near Listowe, in the county of Kerry, Ireland, should she survive me, so long as she shall live, and so long as either my said wife, Margaret Harnett, and my sister-in-law, Anne Crilly, shall be yet living, said sum to be paid half-yearly, the first payment to be made at the end of six months after my decease; and upon the death of my said sister, Johanna Shea, during the lives of either Margaret Harnett or Anne Crilly, to continue over said annual sum of one thousand dollars to her son, Daniel Shea, should he be then living, so long as he live, and so long as either the said Margaret Harnett or the said Anne Crilly shall be yet living, in the same manner as I have provided for the payment of the annuity to his mother, but if he be in the United States, said payment to be made in lawful United States money, but if he be abroad the same to be made in gold, or its equivalent, by sight drafts on Ireland or whatever foreign country he may be living in. And upon the further trust I direct my executors and trustees to pay over the balance of said net income over and above said annuity of one thousand dollars, and in the event of the death of both of said annuitants, Johanna Shea and Daniel Shea, during the lives of either said Margaret Harnett or Anne Crilly, then to pay over the whole of said net income to my wife, Margaret Harnett, for and during her natural life, to be paid quarterly, beginning from the time of my decease. Should my said sister-in-law, Anne Crilly, survive my said wife, then I direct my said executors and trustees to pay out of said net income to the said Anne Crilly the annual sum of two thousand dollars for and during her natural life, the same to be paid in quarter-yearly payments; and in case the said Anne Crilly survives my said wife as aforesaid, so that she becomes a beneficiary under this clause of my will, and should she continue to occupy the house, No. 20 East Thirty-First street, free of rent as aforesaid; and should the net income from the said stable, Nos. 15, 17, and 19 East Thirtieth street, exceed the said annuity of one thousand dollars to Johanna Shea or Daniel Shea and the said annuity of two thousand dollars to the said Anne Crilly, then in that event I direct my said executors and trustees to pay over said surplus of income to the residuary legatee or devisee named in this clause of this will so long as the said Anne Crilly lives. On the death of my said wife, Margaret Harnett, and my sister-in-law, Anne Crilly, or, should they both die before me, and should neither my sister, Johanna Shea, nor her son, Daniel Shea, be then living, then I give, devise, and bequeath, and I direct my executors and trustees, if necessary, to transfer, grant, and convey said real estate, viz. Nos. 15, 17, and 19 East Thirtieth street and No. 20 East Thirty-First street, to the Most Reverend Michael A. Corrigan, archbishop of New York, to have and to hold, to him, his heirs and assigns, forever, and in the event of his death during my lifetime, or during the lives of said Margaret Harnett and Anne Crilly, to the person who shall at the time of the happening of said event be the Roman Catholic

archbishop of New York, or, if the see shall then be vacant, to the person who shall then administer the spiritual affairs of said diocese, commonly called the ordinary thereof. But should the said Margaret Harnett and Anne Crilly both die, leaving my said sister, Johanna Shea, and her son, Daniel Shea, or either of them, still living, then I direct my executors and trustees in that event to transfer, grant, and convey said real estate to said archbishop or ordinary, upon the condition that said archbishop or ordinary purchase in some good and reliable insurance or other annuity company an annuity of one thousand dollars for the benefit of said Johanna Shea, and after her death for the benefit of her son Daniel Shea, said annuities to be a charge on said real estate until purchased as aforesaid; but, should said archbishop or ordinary refuse to accept a conveyance of said real estate, subject to the condition aforesaid, then in that event I direct my executors and trustees to sell the said real estate, and out of the proceeds thereof to purchase such annuities, and pay the balance thereof to the said archbishop or ordinary as above set forth, to have and to hold to him, his heirs and assigns, forever.

"Fourth. I hereby authorize my executors and trustees to lease my real estate, or any part thereof, for a term not exceeding five years at any one time.

"Fifth. All the rest, residue, and remainder of my estate, real and personal, of whatsoever kind and wheresoever situate, of which I am or may be seised or possessed or in any wise entitled at the time of my death, including all such estate as may not be hereinbefore effectually bequeathed or devised, either by reason of lapse, illegality, or other cause whatever, I give, devise, and bequeath to my executors and trustees hereinafter named, and the survivor of them, in trust, nevertheless, to collect, demand, and receive the rents, income, issues, and profits thereof, and to pay over the net income and profits thereof unto my wife, Margaret Harnett, for and during her natural life; and upon her death I hereby give, devise, and bequeath the same, and hereby direct my executors and trustees, if necessary, to transfer, grant, and convey the same unto the Most Reverend Michael A. Corrigan, archbishop of New York, to have and to hold to him, his heirs and assigns, forever, and in the event of his death during my lifetime, or during the lifetime of my said wife, to the person who shall at the time of my death and hers be the Roman Catholic archbishop of New York, or, if the said see shall then be vacant, to persons who shall then administer the spiritual affairs of said diocese, commonly called the ordinary thereof."

The defendants Robert J. Hoguet and Margaret Harnett, as executors, and Margaret Harnett and Anne Crilly, individually, demurred to the complaint generally, on the ground that it failed to state facts sufficient to constitute a cause of action, and specifically to so much thereof as attempts to set up a cause of action to the effect that the will is void as being contrary to the statute of perpetuities, to so much thereof as attempts to set up a cause of action to the effect that one or more of the devises or bequests in said will are invalid for the reason that they violate the provisions of chapter 360 of the Laws of 1860. These demurrers were sustained at special term, and a judgment granted dismissing the complaint, with costs; and from such judgment the plaintiffs bring this appeal.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

I. Newton Williams, for appellants.
Wm. P. Quin, for respondent executors.
John D. Kernan, for other respondents.

HATCH, J. So far as disposition is made by this will of the personal property, there can be no possible controversy; for by the second clause the personal property is bequeathed to the wife of the testator absolutely, and the title thereto vested immediately in her

at the death of the testator. Therefore no further consideration is necessary respecting this question.

It is the claim of the plaintiffs that the third clause of the will offends against the statute of perpetuities, and that there is an unlawful suspension of the power of alienation for more than two lives. It is quite evident, from the reading of this clause of the will, that the person who drew the same had in mind the rule respecting the suspension of the power of alienation, and, as we read the language of this clause, he carefully avoided infringement of such rule. By it a trust is created, and certain real estate therein mentioned is devised to the executors in trust for and during the lives of the wife and sister-in-law, with express directions as to payment over of the income—First, to the wife and sister-in-law; and, second, $1,000 in gold annually to a sister residing in Ireland; and, if said sister should die during the lives of the wife and sister-in-law, the $1,000 directed to be paid to her is to be paid to her son, if he be living, so long as he shall live, during the lifetime of the wife and sister-in-law; and, if both the sister and son die, then the payment is to be made to the wife and sister-in-law and to the longest liver of them. It is clearly apparent, therefore, that these provisions do not create an unlawful suspension of the power of alienation; for the payment of the annuity to the sister or her surviving son is in terms made to end, so far as the trust estate is concerned, with the termination of the trust, viz. upon the death of both the wife and sister-in-law. Upon the happening of this event this clause of the will directs the executors and trustees to transfer, grant, and convey the real estate to the Most Reverend Michael A. Corrigan, archbishop of New York, to have and to hold to him, his heirs and assigns, forever, and, in the event of his death during the life of the testator, or of the joint lives of the wife and sister-in-law, to the person who should at such time be the Roman Catholic archbishop of New York, or, if the see should then be vacant, to the ordinary administering the spiritual affairs of the diocese; and, if the wife and sister-in-law should die, leaving testator's sister or her son, or either of them, still living, the executors and trustees in such event should transfer such real estate to the person named above, upon the contingency therein provided, upon the condition that such person purchase an annuity of $1,000 for the benefit of the sister, and after her death for the benefit of the son; and the will makes such annuity a charge upon the real estate until purchased. If the archbishop or ordinary refuse to accept a conveyance subject to the conditions, then the executors and trustees are directed to sell the real estate, and out of the proceeds purchase such annuity and pay over the balance to the archbishop or ordinary, who is to have and hold the same to him, his heirs and assigns, forever.

It seems clear from these provisions that, immediately upon the death of both the wife and the sister-in-law, an absolute devise is made of the real estate, and title thereto vested in the archbishop, or, in the event of his death, in the ordinary of the diocese. Such vesting was not hampered by any condition whatever, and in the persons named who took the fee was vested the immediate power of

alienation of the whole estate devised. The condition contained in this clause of the will relates, not to the vesting of the fee or the effect of the devise, but simply seeks to name with certainty the person who shall take. The testator was careful to provide for all the conditions which the course of distribution of his property might create, and therein it was contemplated that the archbishop might not be in being, or both he and the ordinary might refuse to take, and in such event the will vests in the trustees, immediately upon the death of the longest liver of the life annuitants, a power in trust to sell the real estate, purchase an annuity, and pay over to the archbishop or the ordinary the remainder. If this contingency should happen, the effect would be to work an equitable conversion of the real estate into money; but the power of alienation and the disposition of the proceeds would thereby not be suspended for an instant.

It is said, however, that the charge of the annuity upon the real estate, payable to the sister or to her son, is a limitation upon the power of alienation which renders the will in this respect void. This contention cannot be upheld. The mere fact that the purchase of the annuity was postponed to a future time did not prevent the immediate vesting of the estate. The fact that it could only be done in the future in carrying out the terms of the will necessarily contemplated the lapse of some time. Such delays, which involve either mere prudential arrangements or affect the convenience of administration, are never held to offend against the statute of perpetuities. Robert v. Corning, 89 N. Y. 225; Cruikshank v. Home for the Friendless, 113 N. Y. 337, 21 N. E. 64, 4 L. R. A. 140. The charge itself was in the nature of an incumbrance, and no more interfered with the vestings of the fee than would the existence of a mortgage or the .charge of a legacy. It was in reality in the nature of a legacy, and vested in the annuitant immediately with the vesting of the estate. Such conditions do not prevent the descent of the estate, nor occasion a suspension of the power of alienation. Marsh v. Wheeler, 2 Edw. Ch. 155; Loder v. Hatfield, 71 N. Y. 92. Assuming, however that this defeated the provisions of the will, it would only render it void pro tanto, and under the provisions of the residuary clause of the will, as we shall hereafter see, would not inure to the benefit of the plaintiffs.

We are also of the opinion that there is nothing in the contention that the residuary clause is void as being merely an attempt to devise or bequeath income in perpetuity. All of the estate not theretofore effectually devised or bequeathed vests under this clause, upon the death of the wife and the sister-in-law, in the defendant Corrigan, or, if he be dead, in the other persons named as the contingency shall require. The words "devise and bequeath the same" relate to "the rest, residue, and remainder" of the estate, and not to the words "net income." The clause itself is clear and·unambiguous, and is a distinct devise and bequest of all the rest, residue, and remainder of the estate to individuals, and operates to save any lapsed or void legacy. Fairchild v. Edson, 154 N. Y. 199, 48 N. E. 541, 61 Am. St. Rep. 609; Riker v. Cornwell, 113 N. Y. 115, 20 N. E. 602. In order to give any apparent force to his contention in the interpretation of

this clause of the will, the appellant, in his brief, commences to quote in the middle of a sentence, and begins such quotation with a capital letter "To collect, demand," etc., as if this were the principal direction as to the residuary estate. The division is misleading, and it is needless to say that it was never intended by the testator and distorts the meaning of the clause as a whole.

The appellants further contend that the provisions of the will are void in that it is contrary to chapter 360 of the Laws of 1860, as it is a devise or bequest of more than one-half part of the testator's estate to a religious corporation. It is not at all necessary that we determine whether this gift is to the Roman Catholic Church, or to the archbishop as an individual. Assuming it to be the former, for present purposes, it is perfectly evident that the plaintiffs take nothing thereby and have no interest therein. This testator left no child or parent. He did leave a wife; but these plaintiffs would take nothing by descent or distribution from or through her. They are not of the class of persons named in the statute, and it has been held that "the rights springing from the statute are personal, the same as the rights of a borrower under the statute of usury," and only the persons named in the act and those benefited through them can invoke its protection. Amherst College v. Ritch, 151 N. Y. 282, 45 N. E. 876, 37 L. R. A. 305.

It follows that the judgment appealed from should be affirmed, and, as the plaintiffs can take nothing under the will, they are possessed of no cause of action. The complaint should therefore be dismissed, with separate bills of costs to the respondents. All concur.