facture tubs as a part of the firm business. Prior to December 31, 1900, at which time the said lease was to expire, plaintiff wrote to the defendant a letter in response to a letter from the defendant, saying he could have his interest in the premises another year for the sum of $115, payable in advance, or $125 payable at the end of the year. To this letter no response was made by the defendant. Plaintiff claims, however, that the defendant continued to occupy the premises after the expiration of his lease for 1900, and thereby became liable for the rent under the terms as stated in his letter. This case was tried in the justice's court, where the plaintiff recovered judgment for $90. It was appealed to the county court for a new trial, and upon that trial the county judge directed a nonsuit against the plaintiff upon the ground, as stated by him, that there was no proof of any occupancy by the defendant during the year 1901.

In this ruling, we think, the learned county judge was in error. Certain evidence tending to show the occupancy in 1901 by J. E. Bliss in behalf of the partnership was rejected by the county court as not pleaded. Enough appears in the case, however, to show that J. E. Bliss occupied the premises in 1901, representing his wife's interest in the partnership. His acts, therefore, in the partnership business, were, as matter of law, acts done in behalf of both partners, and his occupancy in the conduct of the partnership business was the occupancy both of his wife, whom he represented, and of his wife's partner, this defendant. It was apparently the same occupancy as that which existed in 1900, which was not surrendered in any way by this defendant at the expiration of the lease for the year 1900. I am unable to see how there could be a surrender of the premises at the expiration of the year 1900 without an abandonment by the partnership. In any event, one of the partners could not thereafter hold the occupancy for the same purpose for which it was held in 1900, and claim therefrom an abandonment of the occupancy of the other partner under a lease of an undivided interest. The judgment of the county court must, therefore, be reversed, and a new trial granted.

Judgment reversed, and new trial granted, with costs to appellant to abide event. All concur.

---

(85 App. Div. 132.)

### In re BEERS' WILL.

### In re STILSON.

(Supreme Court, Appellate Division, Third Department. June 30, 1903.)

1. WILLS—BENEVOLENT AND CHARITABLE BEQUESTS—VALIDITY—WAIVER OF STATUTE.

Laws 1860, p. 607, c. 360, provides that no person having a husband, wife, child, or parent shall, by will, bequeath to any benevolent, charitable, literary, scientific, religious, or missionary society, association, or corporation more than one-half of his estate, after payment of debts. By antenuptial agreement, the parties thereto waived and released to each other, their heirs, etc., all "claims to any property owned by either at the time such marriage takes place, or at the time of the decease of either, or at any other time, that either might have as husband or wife by law, were this instrument not executed; the object and intent of this instrument being to deprive each of the parties hereto from all right of

inheritance as heir at law, next of kin, or otherwise, in the property of
the other, leaving the property of each to be managed and controlled
by themselves, and at the decease of either to descend as it otherwise
would, had the marriage never taken place." The wife died, leaving a
husband, but no children, and by her will, after several legacies, gave
the residuum of her property, which was personal, to various religious
and missionary societies. After payment of the debts, etc., this residuum
amounted to over half of the estate. *Held*, that the release of the hus-
band contained in the antenuptial agreement was effectual to waive the
provisions of the statute as to the residuary legatees, and that the prop-
erty should pass as specified in the will, to the exclusion of the next of
kin.

Appeal from Surrogate's Court, Otsego County.

In the matter of the judicial settlement of the accounts of Charles
Stilson as executor of the last will and testament of Sophia M. Beers,
deceased. From certain parts of the decision of the surrogate, the
residuary legatees appeal. Reversed.

This proceeding was instituted by Charles Stilson, as executor of the last
will and testament of Sophia M. Beers, deceased, for a judicial settlement of
his accounts. Sophia M. Beers died on the 19th day of December, 1900,
leaving her surviving a husband Oliver Beers, and no parent or child or de-
scendant. By her will, after certain legacies, she gave the residuum of her
estate "to the Board of Home Missions of the Presbyterian Church in the
United States of America, incorporated April 19, 1872, by the laws of the
state of New York, the Board of Foreign Missions of the Presbyterian Church
in the United States of America, the American Bible Society, and the Ameri-
can Tract Society, to be equally divided between said societies, and to be
used and disposed of according to the rules, regulations and by-laws of said
respective societies." After deducting the debts and the transfer tax, these
residuary legatees would receive the sum of $3,642.99 over and above one-
half of the estate. Upon the accounting of the executor, the next of kin
objected that these residuary legatees are not entitled to said moneys, by
reason of chapter 360, p. 607, of the Laws of 1860. This objection raises
the one question involved in this case. Prior to the marriage of the said
testatrix to Oliver Beers, an antenuptial agreement was signed, which reads
as follows:

"This agreement made and entered into this 29th day of May, 1880, be-
tween Oliver Beers of the town of Morris, county of Otsego, and state of
New York, of the first part, and Sophia M. Pratt, of the town of Butternuts,
county and state aforesaid, of the second part, witnesseth: That whereas,
a marriage is about to be had and solemnized between the said parties, each
of which are possessed of certain real and personal property and each of
which would be entitled to certain rights and interests in the property of the
other at the decease of either of the parties, by the statutes of the state of
New York, if this instrument was not executed, and such marriage should
be had and solemnized:

"Now, therefore, it is hereby mutually agreed between the parties hereto,
in consideration of such marriage, that in case such marriage shall be
solemnized as is contemplated by the parties hereto, that each party hereby
releases to the other, all claim to property real or personal or property of any
nature whatsoever that may be owned or possessed by either party at the
time of such marriage or thereafter acquired up to the time of the decease
of either party, that either might acquire or be entitled to as husband or
wife by virtue of the statute law of this state, were this instrument not
executed, each party hereto owning property in their own right, and this
marriage is to be had and solemnized only upon the express condition that
each of the parties hereto shall and do hereby waive and release to each
other, and the heirs, executors and assigns of each other all claim or claims
to any property owned by either at the time such marriage takes place or
at the time of the decease of either or at any other time, that either might

have as husband or wife by law were this instrument not executed; the object and intent of this instrument being to deprive each of the parties hereto from all right of inheritance, as heir at law, next of kin, or otherwise, in the property of the other, leaving the property of each to be managed and controlled by themselves, and at the decease of either to descend the same as it otherwise would had the marriage never taken place.

"In witness whereof, the said parties have hereunto set their hands and seals the day and year first above written.

　　　　　　　　　　　　　　　　　"Oliver Beers.　　　[L. S.]
　　　　　　　　　　　　　　　　　"Sophia M. Pratt.　[L. S.]

　　"Executed in presence of
　　　　"Louisa Beers Whitcomb,
　　　　"May 29, 1880."

The surrogate has held that under the law of 1860 the residuary legatees were not entitled to more than one-half of the property. From the decree entered upon this decision, the residuary legatees appeal.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Tilley Blakely, for appellants.

Nathan Bridges, for respondents Wilcox et al.

Lynn J. Arnold, special guardian, for infant respondents.

SMITH, J. The controversy here is upon the construction of chapter 360, p. 607, of the Laws of 1860. By the provisions of that statute, no person having a husband, wife, child, or parent, shall, by will, bequeath to any benevolent, charitable, literary, scientific, religious, or missionary society, association, or corporation more than one-half of his estate, after the payment of his debts. Such a bequest, to the extent of one-half, however, is deemed valid. This testatrix left a husband. By the letter of the statute, therefore, the residuary bequest, as far as it exceeds one-half of the estate, becomes void. This interpretation could hardly be questioned by the residuary legatees if it were not for the existence of an antenuptial agreement made prior to the testatrix's marriage, by which the parties to such agreement have waived and released to each other, their heirs, executors, and assigns, "all claim or claims to any property owned by either at the time such marriage takes effect, or at the time of the decease of either, or at any other time, that either might have as husband or wife by law were this instrument not executed; the object and intent of this instrument being to deprive each of the parties hereto from all right of inheritance as heir at law, next of kin, or otherwise, in the property of the other, leaving the property of each to be managed and controlled by themselves, and at the decease of either to descend as it otherwise would had the marriage never taken place."

The act of 1860 which is here before us for construction has been discussed by the courts in various cases. The courts are not all agreed as to what is the exact purpose of the act. That it is not a mortmain statute seems, however, to be generally conceded. The act can hardly be held to have been passed solely for the benefit of those named in the act. Its purpose is, to my mind, clearly broader than this. If, for instance, a man dies, leaving a wife, while, under the intestate laws of the state, the wife would receive a portion of his property, she would not receive it all. The next of kin of the husband are directly benefit-

ed under the terms of the statute. We are not prepared to assent to the doctrine of Frazer v. Hoguet, as reported in 65 App. Div. 192, 72 N. Y. Supp. 840. In the illustration given, it cannot be possible that the rights of the next of kin in the estate of the deceased husband can thereafter be dependent upon the election of the wife. If that were so, she could auction that election between the residuary legatee and the next of kin. Any interpretation of the statute which would place the rights of the next of kin in such hazard would be unpractical and unreasonable. Nor do I read such a rule in the case of Amherst College v. Ritch, 151 N. Y. 282, 45 N. E. 876, 37 L. R. A. 305. Reading the opinion in that case in connection with the facts there for decision, one proposition is held, to wit, that the rights under the statute may be waived by the widow and next of kin, and that the next of kin in that case had rights which could only be waived by them.

If this statute were intended solely for the benefit of those named in the statute, this purpose could be accomplished in a much clearer and more simple way. Where, after the making of a will, a child is born who is not provided for in the will, the law provides, not that the will shall be void, but that the child shall take the share to which he would be entitled under the intestate laws of the state. Such a provision might well have been made as to the husband, wife, or parent mentioned in the statute; but the Legislature has seen fit to make a different rule, and declare such legacy void, the direct effect of which is not only to make the legacy void as to the persons named in the statute, but as to any party who would, under the intestate laws of the state, take in connection with such party in case of intestacy.

The case at bar, however, calls for the application of the rule to a state of facts quite different from those found in any adjudicated case. The property left was personal. No children survived. The husband, then, except for this antenuptial agreement, would, upon distribution, be entitled to the whole surplus. Had this antenuptial agreement not been executed, the husband could, after the death of the wife, have waived the statute, so as to pass the property wholly to the legatees named. Such is the effect of the decision in Amherst College v. Ritch, supra. I see no reason why that waiver could not be made before death, by an agreement upon consideration; and, if before death, why not before marriage, by an antenuptial agreement. The next of kin within the apparent purview of the statute are those only who inherit together with one of the persons named in the statute—as, for instance, if a husband dies, leaving a wife and no children. The statute indicates no purpose to provide for remote next of kin in substitution for those named in the statute. Those cases which speak of the right of the next of kin are those only in which the next of kin inherit in connection with one of the persons named in the statute. Where the husband, who would otherwise be entitled to the entire surplus, has waived his claims, either before or after the death of the wife, the statute is, I think, so far personal as to preclude the next of kin from raising the question. With this interpretation of the rule as stated in Amherst College v. Ritch, no antagonism is found to the rule stated in Harris v. American Bible Society, 2 Abb. Dec. 316. I

am of opinion, therefore, that the release of the husband contained in the antenuptial agreement was effectual to waive the provision of the statute as to the residuary legatees, and that the property should pass as specified in the will. The decree of the surrogate should therefore be reversed, with one bill of costs to the residuary legatees, one to the special guardian, and one to the next of kin, payable out of the fund.

Decree reversed, and matter remitted to the surrogate, with direction to proceed in accordance with opinion, with one bill of costs to the residuary legatees, one bill of costs to the special guardian, and one to the next of kin, payable out of the fund. All concur.