(103 App. Div. 327.)

### ROBB v. WASHINGTON AND JEFFERSON COLLEGE et al.

(Supreme Court, Appellate Division, First Department. April 7, 1905.)

1. WILL—TESTAMENTARY POWER—STATUTE—CONSTRUCTION.

Testator executed a will devising more than half of his property in trust to a charitable use. Before his death he executed a declaration of trust irrevocably vesting in the beneficiaries of the charitable use the same portion of his estate, and by codicil revoked portions of his will. He died leaving a widow, but no parent or child, surviving. *Held*, that a nephew of testator, though not a beneficiary under either the will or declaration of trust, but who would have taken an interest in testator's property, as next of kin, on testator's decease intestate, was, in a proceeding to declare the trust and the will invalid, entitled to invoke Laws 1860, p. 607, c. 360, providing that no person having a wife, child, or parent shall by will devise or bequeath to any charitable or literary corporation, in trust or otherwise, more than half of his estate after payment of his debts.

2. SAME.

The prohibition contained in Laws 1860, p. 607, c. 360, is not applicable to a trust executed in the lifetime of the creator of the trust.

3. CONTRACT TO ENDOW—CONSIDERATION—SPECIFIC PERFORMANCE.

Where a promisor induced a college to establish a chair of rhetoric on his promise of an endowment of certain securities, and the college in good faith established the chair at great expense, so that, unless the promise was performed, irreparable loss would result to it, the performance by the

college was a good consideration for the promise, and entitled the college to specific performance, as against the heirs and next of kin of the promisor, on his decease, even though the instrument evidencing the transaction, and purporting to be a declaration of trust, was insufficient as such, or, tested as a gift inter vivos, was insufficient to pass title, owing to a failure to deliver the securities.

**4. WILLS—DECLARATION OF TRUST.**

The primary distinction between wills and declarations of trust is that a will takes effect in the future, while the declaration of trust takes effect in præsenti, during the life of the settlor.

**5. DECLARATION OF TRUST—VALIDITY AND EFFECT.**

A declaration of trust, in favor of a college, of more than half of the settlor's estate, to take effect in præsenti, subject to a trust in the settlor during his life for a portion of the income of the fund, and on condition that the college, after the death of the settlor, pay specified sums from the principal fund and certain annuities during the lives of the annuitants after his death, was not a testamentary disposition as to the charges or annuities, and hence was not in violation of the statute of wills, or Laws 1860, p. 607, c. 360, providing that no person having a wife, child, or parent shall by will devise or bequeath to any charitable or literary society, association, or corporation, in trust or otherwise, more than half of his estate.

**6. TRUSTEE—CHARITABLE CORPORATION—POWERS.**

Where a charitable corporation has an interest either in the principal or in the income of an endowment, it may act as trustee for others having an interest therein.

**7. SAME—LEGAL AND EQUITABLE ESTATES—MERGER.**

A merger of legal and equitable estates takes place only when the trustee is the sole beneficiary.

[Ed. Note.—For cases in point, see vol. 47, Cent. Dig. Trusts, § 199.]

**8. DECLARATION OF TRUST—GIFT OF CHARITABLE USE—CONSTRUCTION.**

Where an endowment was by an instrument purporting to be a declaration of trust given for a particular charitable use, and "irrevocably" to a college having power to accept it, and which did accept it during the life of the settlor on its creation, but subject to a trust in favor of the settlor for a portion of the income during his life, and to the payment of specified sums on his death, and annuities after his death, the college took the corpus of the estate as owner for the particular charitable use, and not as trustee, even though the trust as to the annuitants was invalid, and notwithstanding the characterization of the instrument by the settlor as a declaration of trust, and though the settlor reserved the right to make substitution of beneficiaries other than the college, and the right to act as trustee for the college and retain possession of the securities constituting the principal of the fund during his life.

**9. SAME—PERPETUITIES—STATUTE—CONSTRUCTION.**

The personal property law (Laws 1897, p. 507, c. 417, § 2), forbidding the suspension of the absolute ownership of personal property for more than two lives in being at the date of the instrument containing the limitation, is not applicable where a trust is created by a resident of the state, to be executed in another state.

[Ed. Note.—For cases in point, see vol. 39, Cent. Dig. Perpetuities, § 2.]

**10. SAME.**

The validity of a trust to a foreign corporation created by a resident of New York, as regards perpetuities or accumulations, depends on the law of the state where the corporation is domiciled.

[Ed. Note.—For cases in point, see vol. 39, Cent. Dig. Perpetuities, § 2.]

**11. SAME—TESTAMENTARY POWER.**

A disposition of property for a foreign trust in violation of Laws 1860, p. 607, c. 360, providing that no person having a wife, child, or parent

shall by will devise or bequeath to any charitable or literary corporation, in trust or otherwise, more than half of his estate after payment of his debts, is within the statute.

12. ANNUITIES—POWER OF ALIENATION—PRESUMPTION.

Where annuities were made a charge on an endowment created by a resident of New York for the benefit of a Pennsylvania corporation for a particular charitable use, a presumption arises in a proceeding in New York attacking the validity of the annuities that the common law prevails as to the right to alienate annuities, which is not overcome without proof of a statute of Pennsylvania prohibiting their alienation.

13. SAME—COMMON LAW.

At common law, annuities are a charge simply on the estate or rents and profits, and are alienable, and hence do not violate laws against perpetuities.

14. SAME—VALIDITY.

Where a settlor of an endowment on a college for a particular charitable use, taking effect in præsenti, during the life of the settlor, directed that the college should pay after his death certain annuities from the income of the securities, but left the management of the securities in the college, the annuities were intended as a mere lien or charge on the income, and hence no strict statutory trust was created for the annuitants.

15. SAME.

The settlor of an endowment on a college, taking effect in præsenti during the life of the settlor, for a particular charitable use, stipulated that after his death the college should pay from a portion of the income annuities to seven beneficiaries in being, during their respective lives, and that on the death of the survivor the whole income should be used by the college in carrying out the charity for which the endowment was created. *Held*, that assuming the stipulation to create a strict statutory trust for the annuitants, and assuming that the annuities were unassignable, the trust was sustainable on the theory that, although the securities constituting the trust fund were not severed or severable, yet the trust was severable as to the respective annuitants, so that there would be a suspension of the power of alienation of that part of the income accruing to each annuitant only during his life, which would not be a violation of the statute against perpetuities.

Appeal from Special Term, New York County.

Action by Robert S. Robb against the Washington and Jefferson College and others. From the judgment, certain defendants appeal. Reversed.

Appeal by the defendant executor and by the defendants McIlvaine and Ellen V. Wallace and by the defendants William N. Wallace and Benjamin E. Lillie from a judgment of the Supreme Court entered upon a decision upon a trial of the issues at Special Term, adjudging a declaration of trust made by the testator in favor of the Washington and Jefferson College void, and that said college took under the will one-half the net estate left by the testator, and that, as to the remainder, except household furniture and effects and some debts which he forgave, he died intestate.

The plaintiff is one of the next of kin (a nephew) of John H. Wallace, who died at his residence, in the city of New York, on the 2d day of May, 1903, being 81 years of age, leaving, him surviving, a widow (one of the appellants), a sister, and several nephews and nieces, his only heirs at law and next of kin. The object of the action is to have a certain instrument, called a "declaration of trust," and certain provisions of the decedent's will, declared void, and to have it adjudged that the decedent died intestate as to about one-half of his estate. The action is brought in form for the benefit, also, of any of the next of kin who may join in and contribute to the expense of the action, but none of them have done so. The widow joins with the executors in seeking to sustain the declaration of trust, and she consented to its execution; and, so far as the record discloses, the plaintiff, who takes

nothing either under the declaration of trust or under the will, stands alone in contesting the validity of those instruments.

The decedent left a last will and testament, executed in New York on the 23d day of January, 1902, and therein appointed the United States Trust Company executor of his estate. The will established seven separate trusts, two of $12,500 each, and five of $5,000 each; and the testator bequeathed these amounts, respectively, to his executor, to pay the income thereof to the respective beneficiaries for life, and provided that upon the death of the respective beneficiaries the principal should revert to, and become part of, his residuary estate. He also, pursuant to an antenuptial agreement in writing with his wife, made on the 10th day of March, 1893, directed the immediate payment of a legacy of $10,000 to her upon the condition of the antenuptial contract that she accept the same in lieu of dower, and release all claims upon his personal estate. He also gave legacies to others aggregating $22,000; making, in all, $32,000 in legacies. He also gave to his wife his household furniture and effects, and canceled the indebtedness of three nephews to him. He then gave the remainder of his estate, including his residuary estate, to the trustees of Washington and Jefferson College, an educational institution incorporated under the laws of Pennsylvania, and located at Washington, in that state, and to their successors in office, "for the uses and purposes of said college." On the 5th day of September, 1902, he executed a codicil to the will, and thereby revoked every provision of the will, except the gift of household furniture and effects to his wife, the cancellation of the indebtedness of the nephews, and the clause disposing of the remainder and residuary estate. In the clause of the codicil revoking the legacies and trusts, the testator assigns as a reason therefor, "as I have this day by a declaration of trust made present provision for the beneficiaries therein respectively named." He assigned as a reason for revoking the appointment of the United States Trust Company as executor, and the substitution of James D. Moffat, D. D., LL. D., president of the college, and John A. McIlvaine, second vice president, and a member of the board of trustees of the college, and a judge of the court of common pleas of the state of Pennsylvania, that he had that day "created and declared a trust that rendered the services" of the trust company "unnecessary"; and, referring to the new executors, he said, "who will have an interest in seeing my said declaration of trust enforced, as the executors of my last will and testament." The will and codicil were duly admitted to probate on the 9th day of December, 1903, and, McIlvaine having renounced his right to Moffat as sole executor, letters testamentary were duly issued to Moffat as sole executor. The codicil and declaration of trust were executed in the city of New York, and, although the latter was executed a few minutes before the former, they were agreed upon and intended to be executed and to take effect simultaneously. It appears that the college was duly authorized to take and receive moneys, and administer gifts and trusts of the nature and amount and for the purposes mentioned in the declaration of trust. The ground of attack upon the declaration of trust is not that the college could not take, but that it was in violation of that provision of the laws of this state which prevents the suspension of the absolute ownership of personal property for more than two lives in being, and that it violated the provisions of chapter 360, p. 607, of the Laws of 1860. The testator formerly lived in Washington county, Pa., near the college. The declaration of trust, so far as material to the questions presented by the appeals, is as follows:

"Whereas, John H. Wallace, of the City of New York, in the State of New York, desires to now irrevocably appropriate and settle certain securities of the value of one hundred and twenty-nine thousand dollars or more, out of the property of which he is now possessed, on Washington and Jefferson College, an educational institution duly instituted under the laws of the Commonwealth of Pennsylvania, having its domicile in the Town of Washington, County of Washington and State of Pennsylvania, subject, however, to the payment of certain sums hereinafter designated, to the end that there may be, by said College immediately established and hereafter perpetually maintained a professorship of Rhetoric and Oratory wherein such a curriculum will be prescribed as will tend to develop in the students pursuing

the course of study the art of expression and the grace of oratory, to the end that the graduates of the College who enter the ministry may be more efficient in their public speaking, and in the reading of the Holy Scriptures:

"And whereas, the said John Wallace desires that the principal sum or corpus of his settlement be irrevocably given and set apart to the said object at once, rather than after his decease, but at the same time desires to hold and manage said securities in trust for said College during his life, and that part of the annual income of said principal sum during his natural life be enjoyed by himself.

"And Whereas, the said Washington and Jefferson College by its Board of Trustees, acting in pursuance of the powers conferred upon said College by its charter, has accepted said securities in the terms and for the purposes above set forth, and has agreed in consideration thereof to establish immediately the chair of Rhetoric and Oratory in accordance with the wishes of the settlor, as above expressed, and otherwise to faithfully comply with the terms of this trust.

"And Whereas, it is proper that the trusts upon which the said securities are to be held should be declared in writing:

"Now, Therefore, I, John H. Wallace, do hereby declare that I have this day irrevocably appropriated and set aside securities of the value of one hundred and twenty-nine thousand dollars, or more, said securities being now in my possession and being hereinafter more particularly enumerated, and that I hold the same in trust and special confidence for the following uses and purposes and none other, to wit:

"First. To pay over upon the First day of October in each and every year during my natural life to said Washington and Jefferson College, upon the receipts of its treasurer, out of the net income arising from said securities, the sum of Eighteen hundred dollars to be applied to the maintenance of said professorship.

"Second. To take and apply to my own individual use, during the term of my natural life all the residue of the net annual income of said securities.

"Third. From and immediately after my decease I hereby appoint the said Washington and Jefferson College trustee in my room and stead and direct and empower said College to immediately take and hold said securities as I now hold them in trust to presently pay out of the principal of the same as follows."

Here follows the revoked legacies, aggregating $32,000, and in substantially the same language as that by which they were given under the will. The instrument then further provides as follows:

"After the foregoing Thirty-two thousand dollars have been paid by Washington and Jefferson College, my successor in this trust, out of the principal sum of the securities therein embraced, and hereinafter enumerated, the remaining securities shall be held by said college in trust to pay out of the net income annually, counting from the date of my death, the following sums, to wit."

Then follows a direction to pay each of the seven beneficiaries for whom separate trusts were created in the will a specific sum of money—$550 to each of those for whom a trust of $125 had been created in the will, and $250 to each of the others—which, although not stated to be so, equals 5 per cent. on the principal of each of the $5,000 trusts provided for in the will, and 4% per cent. on the others; the aggregate of the annuities being $2,350. It is then provided as follows:

"The balance of the net income of said remaining securities during the lives of said annuitants (and after the death of the survivor of them) all the net income thereof shall be devoted by the said Washington and Jefferson College to perpetually maintain a professorship in Rhetoric and Oratory to be called the Wallace Professorship of Rhetoric and Oratory, the incumbent of which chair shall be charged with the oversight of that part of a full education which relates to the art of expression, including not only the grammatical and rhetorical use of the English language, but also public speaking and reading with special reference to the public reading of the Holy Scriptures, and also as a branch of this professorship that they will establish and maintain a course of instruction in elocution and voice culture under a competent

instructor or instructors, and that students will be encouraged to pay attention to this course of instruction by the establishment of prizes, and that all proper pressure will be brought to bear on the candidates for the ministry to avail themselves of the advantage afforded by the establishment of this professorship.

"I hereby reserve to myself during the period of my natural life, and after my decease I hereby authorize and empower my said successor in the trust, to sell any or all of the securities above referred to and to invest and reinvest the proceeds of such sale, as well as the proceeds of any investments that may mature or be redeemed, in other good interest bearing securities, according to the best judgment of myself during my lifetime and that of my successor, after my decease, in case any or all of the persons named as beneficiaries in this trust, to whom my successor is to pay money, dies before I do, or if for any reason satisfactory to myself I should desire to do so, I also reserve to myself the right and power by writing duly executed to revoke, change or modify any or all the payments that I have directed to be made to them respectively and to substitute and appoint other person or persons to whom such payment or payments shall be made, provided, however, that in no event shall Washington and Jefferson College be required to pay out of the principal of the securities herein irrevocably settled on it in the aggregate more than Thirty-two thousand dollars and annually out of the net income thereof more than twenty-three hundred and fifty dollars, as now provided, my primary purpose in creating this trust being to fully and adequately endow a chair of Rhetoric and Oratory in said College."

Here follows a list of securities definitely described, ending with the statement "amounting in all to one hundred and twenty-nine thousand dollars at their face value." The concluding paragraphs of the instrument are as follows:

"All of the above mentioned securities are in a lock-box in the vault of the Mercantile Safe Deposit Company, in the City of New York, separate and apart from any other papers and property, and I do hereby direct and empower the said Washington and Jefferson College by its properly authorized officer to take possession of the same at my death as my successor in the trust herein created and declared, and I authorize said trust company to give said Washington and Jefferson College, by its proper officer, access to said lock-box, the same as I may have had during my life, it being my intention that the key or combination to said lock-box and to the said securities, at my death, shall be taken possession of directly by said Washington and Jefferson College.

"If after my death any person should call in question the right of my successor in this trust to take immediate possession of said securities I hereby empower and direct my executors or administrators, or the survivors or survivor of them (to overcome said objections and to enable the said Washington and Jefferson College to come into full possession of said securities) without further or other authority and without any liability to my estate or any person or persons interested therein, to assign, transfer, set over and deliver, by such proper instruments in writing, under their hands and seals, as may be deemed necessary, all the above mentioned securities, or such securities as I may have replaced them with to my said successor, in this trust, and the receipt of the treasurer of the said College, shall be a good and sufficient acquittance to them for so doing, and they shall not be otherwise held liable for so doing or to account therefor."

It was executed in duplicate, under the hand and seal of the decedent, in the presence of McIlvaine and Moffat; and at the same time McIlvaine, as second vice president of the college, and by authority and direction of the executive committee of the board of trustees, executed at the foot of the declaration of trust a writing under his hand and seal as follows:

"I, John A. McIlvaine, Second Vice President of Washington and Jefferson College, for and in behalf of said College accept notice of the execution of the foregoing written Declaration of Trust and the setting apart and settlement of said securities therein enumerated on the said College for the uses and purposes therein named, and by authority and direction of the Executive Committee of the Board of Trustees of said College I accept for said College

the trust imposed upon it by said Declaration of Trust and agree that steps will be immediately taken to establish a Professorship of Rhetoric and Oratory."

The securities described in the declaration of trust embraced his entire estate, with the exception of between $5,000 and $10,000.

All the beneficiaries survived Wallace, and he did not exercise the power to revoke, change, or modify the provisions made for any of them. With the exception of the widow, who resided here, they were all nonresidents of this state; some residing in Pennsylvania, and others in Ohio and Iowa. Three days after executing the will, and prior to the execution of the declaration of trust, the testator, on his own invitation, had an interview with Dr. Moffat and Judge McIlvaine at the residence of one John H. Wallace, near Washington, Pa. He exhibited to them the residuary clause of his will, and stated that his purpose was to establish in the college a chair of rhetoric and oratory, for the purpose substantially as subsequently set forth in the declaration of trust, and that he had requested their presence with a view to discussing the "business side of the proposition"; that the provision of his will was general, but that he was desirous that a particular professorship be established immediately. Judge McIlvaine assured him that his wish could be accomplished, and that the time was opportune, as the college was to hold its centennial celebration the coming October, and it would be gratifying to then announce the establishment and endowment of the chair, which should bear the name of the testator; and, at the request of the testator, he promised to prepare and outline a plan for effecting the object. Between the 20th and 25th days of August thereafter the testator called upon Judge McIlvaine at the courthouse in Washington, Pa., and stated that since their last interview he and Dr. Moffat had agreed upon a plan for the establishment of the professorship, which he desired established at once, and that he would give the college the securities, subsequently described in the declaration of trust, of the face value of $129,000, stating where they were, as an investment fund upon condition that it would immediately establish the professorship, and assume the payment after his death of $32,000 to various persons that he would indicate and that he had indicated in his will, and annuities aggregating $2,250 (the testimony so reads, but the annuities subsequently provided for in the declaration of trust aggregated $2,350) to certain parties during life, if they were alive when he died; that he wished to see the professorship partially established and started, and would give the college the corpus of the bonds and $1,800 per annum presently, and that eventually it could be extended by the whole of the income, but wished to retain the balance of the income during life for his own support, and that he wished to retain the bonds "as trustee of the college and manage the funds while" he lived, because he took pride in the investment in the bonds, was acquainted with finances, and in touch with the financial situation in New York, and thought he could best look after "this trust in the college" while he lived, and "would like to retain the trusteeship." He then requested Judge McIlvaine to draft a paper embodying the agreement as he had outlined it, and left the will with him for that purpose, with the understanding that the draft of the agreement was to be forwarded to him for submission to a lawyer in Pittsburg, which was done. The testator returned to Judge McIlvaine on the 30th of August, and presented an instrument substantially the same as the declaration of trust subsequently executed; stating that it was satisfactory to him, and asking if it was acceptable to the college. Judge McIlvaine suggested some minor changes, and the testator then suggested that it would be necessary for Dr. Moffat and Judge McIlvaine to go to New York "before this thing is closed up," and see the bonds, and determine whether they were satisfactory to the college, and this was assented to. The testator then requested Judge McIlvaine to prepare copies of the declaration of trust for execution in duplicate. This was also assented to, and Judge McIlvaine then said: "Mr. Wallace, this makes a present disposition of your property. What about your will?" And after some discussion Judge McIlvaine suggested that a codicil be drawn substantially as the one subsequently executed. Pursuant to the request of the testator, Dr. Moffat and Judge McIlvaine came to New York, and met him at the Fifth Avenue Hotel on the 5th day

of September, 1902. Judge McIlvaine presented the declaration of trust in duplicate, and the testator read the same, and expressed satisfaction therewith; but it having been previously suggested by Judge McIlvaine that it might be well to consult a member of the bar of New York, who would be familiar with the laws of this state, the testator suggested that they call on his attorney, Mr. Bruce—the counsel for the college on the appeal. They accordingly repaired to his office in Wall street, and there were informed that he was absent and would not return for ten days or two weeks. At the suggestion of the testator, they went to the Mercantile Safe Deposit Company to inspect and make a memorandum of the bonds. The testator opened the box containing the bonds, and sorted and placed them on a table in front of Judge McIlvaine, saying: "Now, gentlemen, there are the bonds for your examination. You can make a list of them." Upon examination it was found that they were the 129 bonds described in the declaration of trust. Judge McIlvaine then handed the bonds back to the testator, saying: "Now, Mr. Wallace, hereafter you will have to keep these bonds separate and apart from your other papers, because, if this agreement is carried out, and the declaration of trust is executed, these bonds hereafter will belong to you as trustee, and not as John H. Wallace, any longer, and they ought to be kept separate; and they ought to be kept in such a way that anybody having any access to this box, either now or after you die, would find indications that the bonds belonged to this particular trust." The testator then inquired if it would be necessary to rent another box, and was informed by Judge McIlvaine that it would be sufficient if they were placed in separate envelopes, appropriately indorsed to show that they did not belong to him. The bonds were then replaced in the box, and left in the deposit vault of said safe deposit company, where they have since remained, and still are. They returned to the office of Mr. Bruce, where the testator decided not to defer the execution of the papers, and the declaration of trust was executed in duplicate by the testator, and by Judge McIlvaine in behalf of the college, as already stated—one duplicate being retained by the testator, and the other taken by Judge McIlvaine for the college—and immediately thereafter the testator executed the codicil. Judge McIlvaine four days thereafter forwarded to the testator 10 envelopes, with forms of indorsement for each as follows:

"The securities in this envelope belong to the Washington and Jefferson College Trust created by me by writing created September 6, 1902, and witnessed by James D. Moffat and John A. McIlvaine.        J. H. Wallace."

—And at the same time wrote a letter to the testator, which was found with his papers after his death, stating that they had been prepared for his convenience, to enable him to place the bonds therein according to the understanding; to obviate the necessity of hiring another box. The testator inclosed the bonds in the envelopes, and either attached the slips forwarded by Judge McIlvaine, or wrote and signed this indorsement upon each—the evidence on this point is not clear—together with a description by name and number of the bonds placed therein, respectively; and, on the 7th or 8th day of November thereafter, Dr. Moffat came to New York at the request of the testator, who accompanied him to the safe deposit vault, and exhibited to him the envelopes thus indorsed, containing the bonds, and introduced him to the secretary of the safe deposit company, and stated to the latter that he wanted Dr. Moffat to have access to the box. Dr. Moffat signed the necessary papers, and was given the password and introduced to the gate keeper, and was given the combination to the box and shown how to open it. The records of the safe deposit company with respect to the box containing these securities contains the following entry: "Special Remarks: Oct. 3, 1902. I direct that the title of this safe be changed to John H. Wallace or Rev. Jas. D. Moffat. J. H. Wallace. Witness: J. B. Russell. 12:40 p. m." Prior to that time it had stood in the name of the settlor. In the meantime the board of trustees of the college had, on the 16th day of September, 1902, at a meeting duly called for that purpose, by formal resolution, accepted the declaration of trust, and covenanted to discharge the same with fidelity, extended a vote of thanks to the testator for the endowment, and formally established the Wallace Professorship of Rhetoric and Oratory, and authorized the se-

lection and recommendation of a professor to fill the chair, and fully notified · the settlor of the action taken. A professor to fill this chair was employed on the 24th day of December, 1902, who immediately entered upon the discharge of his duties, and an additional instructor in connection therewith was employed on the 23d day of June thereafter. The testator had on the 7th day of October, 1902, paid the college $1,800 pursuant to the declaration of trust; and he attended the centennial celebration of the college on the 12th, 13th, and 15th days of October, 1902, at which his endowment of the chair was publicly announced. Upon the death of the settlor the college notified Dr. Moffat of its ownership of these bonds. The evidence is not clear as to who has exercised control over them since, or has their actual custody now. It is claimed that the college has rented the safe deposit box in which the securities still remain, but the evidence on this point is incomplete.

The market value of the bonds at the time the declaration of trust was executed and at the death of the settlor and at the trial was $138,420 and the annual income therefrom was $6,360. Dr. Moffat and Judge McIlvaine reside in Pennsylvania. The other beneficiaries are all made defendants, but, with the exception of the appellants, they have all made default. The Mercantile Safe Deposit Company, also a defendant, filed a formal answer, but has neither appealed, nor responded on the appeal.

Argued before VAN BRUNT, P. J., and HATCH, PATTER-SON, and LAUGHLIN, JJ.

M. Linn Bruce, for appellants Moffat, Washington and Jefferson College, McIlvaine, and Ellen V. Wallace.

John L. Hill, for appellants W. N. Wallace and Lillie.

Henry W. Goodrich, for respondent.

LAUGHLIN, J. The object of the action is to have it adjudged that both the declaration of trust and the will are invalid, and that the decedent died intestate as to all or some of his property. The plaintiff is a nephew and one of the next of kin of the decedent. Neither the will nor the declaration of trust contains any provision for his benefit. The contention of the respondent is not that the college had not, under the laws of Pennsylvania, legal capacity to take the property upon the conditions and subject to the liens or charges or trusts specified in the declaration of trust, but that the declaration of trust was in effect a testamentary disposition of property, and was not executed as a will; that it and the will disposed of more than one-half of the estate of the decedent for a charitable use, in violation of chapter 360, p. 607, of the Laws of 1860, since he left a widow; and, furthermore, that the declaration of trust created invalid trusts, suspending the absolute ownership of personal property for more than two lives in being, in violation of section 2 of the personal property law of New York (chapter 417, p. 507, Laws 1897). The equities are all with the college, and with the designated beneficiaries. The widow approved the declaration of trust and asks that it be sustained. The decedent left no child or parent. He was concededly competent to dispose of his property, and he did not intend that the plaintiff, who had no legal or moral claim upon his bounty, should receive any of his estate. Every object sought to be accomplished by the declaration of trust was commendable. The plaintiff should be confined to his strict legal rights, and the declaration of trust should be sustained, unless clearly invalid.

Many questions, both difficult and interesting, have been discussed in

the briefs and on the argument, some of which, however, in the view we take of others, need not be considered. We will therefore express our views only on those which we deem important and decisive.

1. Some of the appellants contend at the outset that the plaintiff has no standing to maintain the action, because he is not within the protection of the provisions of chapter 360, p. 607, of the Laws of 1860. That statute provides that:

"No person having a husband, wife, child or parent, shall by his or her last will and testament, devise or bequeath to any benevolent, charitable, literary, scientific, religious or missionary society, association or corporation, in trust or otherwise, more than one half part of his or her estate, after the payment of his or her debts (and such devise or bequest shall be valid to the extent of one-half, and no more)."

No child or parent having survived, it is claimed that the widow only may take advantage of the statute, and that she has by the antenuptial contract and by her subsequent acts released her right to object in this regard. It was competent for her to release her rights, and doubtless she could not now be heard to complain that the statute has been violated. Amherst College v. Ritch, 151 N. Y. 282, 45 N. E. 876, 37 L. R. A. 305; Matter of Stilson, 85 App. Div. 132, 83 N. Y. Supp. 67. Expressions more or less deliberate are to be found in judicial opinions to the effect that no one other than those specified in the statute, or one deriving title through them, may object to a disposition of property in violation thereof. Amherst College v. Ritch, supra; Allen v. Stevens, 161 N. Y. 149, 55 N. E. 568; Fraser v. Hoguet, 65 App. Div. 192, 72 N. Y. Supp. 840. If the Legislature intended this statute for the benefit only of those therein specified, I think it would have provided that the devise or bequest would be void as to them, so that they would take as if it had not been made. The language is prohibitive, and I think the proper construction, and the one favored by the preponderance of judicial authority, is that any one who would take any interest in the estate if the instrument should be declared invalid may invoke the provisions of the statute. Jones v. Kelly, 63 App. Div. 614, 72 N. Y. Supp. 24, affirmed 170 N. Y. 401, 63 N. E. 443; Harris v. Bible Society, 4 Abb. Prac. (N. S.) 421; Rich v. Tiffany, 2 App. Div. 25, 37 N. Y. Supp. 330; McKeown v. Officer (Sup.) 6 N. Y. Supp. 201, affirmed 127 N. Y. 687, 28 N. E. 401; Matter of Stilson, 85 App. Div. 132, 83 N. Y. Supp. 67. If the declaration of trust be invalid, the plaintiff, being the son of the testator's sister, would take an interest as one of the next of kin, regardless of the fate of the will, for in that event, assuming the will to be valid, the college could not lawfully take all the residuary estate, and there would be intestacy as to some property. The plaintiff therefore may attack the validity of the trust, and, if it be invalid, contend that the provisions of the will revoked by the codicil were not restored.

2. The appellants contend that the college was entitled to the corpus of these securities on the death of Wallace, by virtue of the contract resting in parol and stated in the declaration of trust, which was fully executed on its part. This is an independent proposition, and I am of opinion that it is sound, regardless of whether there was a valid gift inter vivos or a valid declaration of trust, or whether

the provision for the annuities constitutes a strict statutory trust, or, if so, whether it was valid. On the facts, which have been fully stated separately, and need not be again recited, it clearly appears that the college, in the lifetime of Wallace, fully performed every condition precedent to its right to come into the possession of these securities, and to the ownership of the corpus subject to the payments to certain beneficiaries out of the principal and to the annuities. Everything contemplated to be done by Wallace, as well as by the college, including the trust in him for life, was completely executed. The college at great expense established this professorship at his instance, and extensively advertised that it had been endowed and was to be permanent. It thus incurred financial obligations which it could not repudiate, and became committed to a plan and policy which it could not abandon without jeopardizing its prestige. This was done on the faith of his agreement that the college should receive these securities at his death, subject to the specified charges. It is a general rule of law that where one party induces another to do a lawful act, incurring a liability upon a promise of indemnification, the performance is a good consideration, and the promise becomes binding and enforceable. White v. Baxter, 71 N. Y. 254. It was competent for Wallace to make the agreement. The prohibition contained in chapter 360, p. 607, of the Laws of 1860, only applies to a testamentary disposition of property. Van 'Cott v. Prentice, 104 N. Y. 45, 10 N. E. 257. The contract, to the extent of the share and interest that the college was to receive, was valid and executed; and it is entitled to the possession of the securities, as matter of contract right, regardless of the questions arising concerning the validity of the declaration of trust; or of the charges or trusts for others. Gilman v. McArdle, 99 N. Y. 451, 2 N. E. 464, 52 Am. Rep. 41; Worth v. Case, 42 N. Y. 362. Even though, tested as a transfer of property by a declaration of trust, it should be found imperfect in form or insufficient, or, tested as a gift inter vivos, it be found insufficient to pass title, owing to a failure of delivery of the sureties, yet the agreement of Wallace to give the securities to the college having been in good faith relied and acted upon by it to its prejudice and irreparable loss, unless complete performance by him by delivery be decreed, there was a good consideration, and equity will decree specific performance, if necessary. 27 Am. & Eng. Enc. of Law (1st Ed.) 43; Gilman v. McArdle, supra; Dillwyn v. Llewelwyn, 4 De Gex, F. & J. 519; Lewin on Trusts, 161, Text-Book Series. In this aspect of the case, it is analogous to those where, for a good consideration, a person contracts to leave or will his property in a particular manner, which contracts, as against the heirs and next of kin, when fully performed by the party to whom or for whose benefit the promise was made, are enforceable in equity. Winne v. Winne, 166 N. Y. 263, 59 N. E. 832, 82 Am. St. Rep. 647, and cases cited. The college having agreed to take the property on condition that it make the payments to the beneficiaries, it will be estopped from contesting the validity of the charges, including the annuities. Tabernacle Church v. Fifth Ave. Church, 60 App. Div. 327, 70 N.

Y. Supp. 181, affirmed 172 N. Y. 598, 64 N. E. 1126. If it were necessary to the enforcement of the charges and annuities, equity would apply the secret trust rule (Amherst College v. Ritch, supra), or declare a resulting trust in favor of the beneficiaries, and enforce it. The contract being valid as to the college, and enforceable as to the beneficiaries, the plaintiff cannot complain that the charges or annuities are illegal, and that, therefore, as to those, Wallace died intestate.

3. Aside from the question of contract rights, first discussed, I think the title to these securities was transferred to the college by the declaration of trust. Martin v. Funk, 75 N. Y. 141, 31 Am. Rep. 446; Day v. Roth, 18 N. Y. 448; Young v. Young, 80 N. Y. 422–431, 36 Am. Rep. 634. A trust in personalty is not within the statute of uses and trusts, and may be created orally or in writing, for any purpose not forbidden by law, which includes any trust that may be created by will. Gilman v. McArdle, 99 N. Y. 451, 2 N. E. 464, 52 Am. Rep. 41. Leaving out of consideration for the present the question whether Wallace attempted to create a strict statutory trust in the college after his death, for the benefit of the annuitants, I am of opinion that, construed in the light of the prior parol agreement and the transactions with respect to these securities, the declaration of trust shows an intention on the part of the settlor, and was sufficiently explicit to pass the title to the securities to the college immediately, possession being retained by him during life as trustee of the corpus and of the income to the extent of $1,800 per annum for the college, and to receive and apply the residue of the income to his own use, and that upon his death the interest of the college, which was a remainder during his life, became vested absolutely in possession—regardless of the actual physical possession, which is not material—subject to the charges then presently payable out of the principal, and the annuities payable out of the income. Gilman v. Reddington, 24 N. Y. 18; Gilman v. McArdle, supra; Martin v. Funk, 75 N. Y. 141, 31 Am. Rep. 446; Barry v. Lambert, 98 N. Y. 306, 50 Am. Rep. 677; Brown v. Spohr, 87 App. Div. 529, 84 N. Y. Supp. 995; Beaver v. Beaver, 117 N. Y. 421, 22 N. E. 940, 6 L. R. A. 403, 15 Am. St. Rep. 531; Van Horne v. Campbell, 100 N. Y. 287, 3 N. E. 316, 771, 53 Am. Rep. 166; Wetmore v. Parker, 52 N. Y. 458; Bird v. Merklee, 144 N. Y. 550, 39 N. E. 645, 27 L. R. A. 423; Holland v. Alcock, 108 N. Y. 337, 16 N. E. 305, 2 Am. St. Rep. 420; Williams v. Williams, 8 N. Y. 530; Fowler on Law of Personal Property, 20–31; 27 Am. & Eng. Enc. of Law (1st Ed.) 26. The primary distinction between wills and declarations of trust is that the former take effect in the future upon the death of the testator, while the latter take effect in præsenti, during the life of the settlor. Matter of Will of Diez, 50 N. Y. 88–93. If Wallace intended this as a testamentary disposition, to take effect only upon his death, and adopted the form of a declaration of trust for the purpose of evading the statute of wills, or the provisions of chapter 360, p. 607, of the Laws of 1860, then doubtless it would be void because not executed as a will; but, if he in good faith intended it as a present disposition of his property, it is valid. Am-

herst College v. Ritch, supra; Van Cott v. Prentice et al., supra;
Matter of Crane, 12 App. Div. 271, 42 N. Y. Supp. 904, affirmed
159 N. Y. 557, 54 N. E. 1089; Chamberlain v. Chamberlain, 43 N.
Y. 424.

Before proceeding to analyze the declaration of trust, it is well
to consider the rules of construction by which we are to ascertain
its meaning and validity. As in the case of wills, so in the construc-
tion of declarations of trusts, the intention of the settlor, if not
violative of any statute or rule of law, is controlling, and must be
given effect; and it is to be gathered from a consideration, not of
the precatory words alone, but of all the provisions of the instru-
ment, in the light of any circumstances shown that have a bearing
thereon. Browne v. Murdock, 12 Abb. N. C. 360; 2 Pomeroy's
Eq. Jur. § 1016; Van Cott v. Prentice, 104 N. Y. 45, 10 N. E. 257;
Case v. Dexter, 106 N. Y. 553, 13 N. E. 449. His intention is also
controlling on the question as to whether he intended it as a deed
or transfer or will. Sharp v. Hall, 86 Ala. 110, 5 South. 497, 11
Am. St. Rep. 28. It is important to bear in mind also that "it is a
rule of construction that whatever may be fairly implied from the
terms or language of an instrument is, in the judgment of law,
contained in it." Baldwin v. Humphry, 44 N. Y. 614; Rogers v.
Kneeland, 10 Wend. 218. Lewin, in his great work on Trusts (vol-
ume 2, p. 153, Text-Book Series), says:

"Whether a trust has been created is a question of fact in each case. In
deciding it the court will give effect to the relations and situations of the
parties, the nature and situation of the property, and the purposes the settlor
had in view in making the dispositions."

If ambiguous or open to either of two constructions, that one
should be adopted which will make the trust valid. Roe et al. v.
Vingut, 117 N. Y. 204, 22 N. E. 933; Union Trust Co. v. Owen, 77
App. Div. 60, 78 N. Y. Supp. 1066. The general rule to effectuate
the purpose of the person executing the instrument is well stated
by Peckham, J., in Roe et al. v. Vingut, supra (page 212 of 117 N.
Y., page 934 of 22 N. E.), wherein, after stating that the intent is
to be gleaned from a perusal of the whole instrument, he says:

"Upon such perusal, if a general scheme can be found to have been in-
tended and provided for in the instrument, and such general scheme is con-
sistent with the rules of law, and so may be declared valid, it is the duty of
courts to effectuate the main purpose of the testatrix. To accomplish such
object, the meaning of words and phrases used in some parts of the will must
be diverted from that which would attach to them if standing alone, and they
must be compared with other language used in other portions of the instru-
ment, and limitations must be implied, and thus the general meaning of all
the language must be arrived at."

The language of the codicil revoking the legacies and trusts, and as-
signing as a reason therefor that "present provision" had been made for
the legatees by the declaration of trust, is significant, as showing that
Wallace understood this distinction between a will and a declaration of
trust, and intended by the latter to make present provision for the
legatees and beneficiaries, although as to them enjoyment was post-
poned until after his death. We then turn to the declaration of trust
to ascertain what provision he has made for them, which he thus char-

acterized as "present provision," and we find its entire tenor in accord with that intent, and susceptible of, if not requiring, a construction that he made a present provision for those for whom he had previously made a testamentary provision.  In the first preamble he states that he "desires to now irrevocably appropriate and settle" these securities on the college, "subject, however, to the payment of certain sums hereinafter designated," and assigns as his reason therefor that the professorship may be "immediately established and hereafter perpetually maintained" by the college.  The second preamble shows that he desired to found the chair then, rather than after his death, and, with that end in view, he desired that "the principal sum or corpus of his settlement be irrevocably given and set apart to said object at once," but that he desired during life "to hold and manage said securities in trust for said College," and to use part of the income for his own support.  The third preamble recites, in the past tense, that the college has accepted the securities for the purpose stated, and in the terms imposed, and has agreed "in consideration thereof" to establish the chair immediately in accordance with his wishes, and "otherwise to faithfully comply with the terms of this trust."  The fourth preamble, as counsel for the college urges, indicates that the declaration of trust was merely intended to perpetuate the parol agreement previously made.  The settlor then declares that he has that day "irrevocably appropriated and set aside" the securities, and that he holds them "in trust and special confidence" for the purpose therein set forth, "and none other."  There is here no room for any inference of an intent to evade the statute of wills, or chapter 360, p. 607, of the Laws of 1860.  The declaration of trust was to take effect immediately.  The interest of the college vested immediately, subject to the trust in the settlor during life, and upon condition that it pay the sums specified upon his death, and the annuities thereafter.  Apart from the question as to whether a legal trust was created for the payment of the annuities, which will be discussed presently, these were lawful conditions, and did not constitute a testamentary disposition as to the charges or annuities.  The trust and power in the settlor during his life were simple and lawful.  He was to have possession of the securities, and collect the income, with authority to change the investment, and the right to substitute beneficiaries as to that part of the principal and income which it was not intended that the college should enjoy.  This neither restored to nor gave him individual control or ownership.  The only authority or control which he was authorized to exercise, so far as the corpus and income which the college was to take, was as trustee for it.  Van Cott v. Prentice et al., 104 N. Y. 53–55, 10 N. E. 257.  He could only act in his own behalf in appropriating to his own use the surplus income over $1,800 per annum, and in exercising the power to·substitute beneficiaries—matters which did not concern the college.  Reserving a specified residue of the income of the securities to his own use during life did not prevent the vesting of the corpus and $1,800 per annum of the income in the college.  As the learned counsel for the college well argues, it was competent for Wallace to have a beneficial interest in the securities, and at the same time to hold them as trustee for the college.  A merger of the legal and equitable titles takes place only when the trustee is the sole

beneficiary, in which event a trust would not be effectually created; but not so where, as here, the interest of the trustee only extended to part of the income. Woodward v. James, 115 N. Y. 357, 22 N. E. 150; Matter of James, 146 N. Y. 98, 40 N. E. 876, 48 Am. St. Rep. 774; Losey v. Stanley, 147 N. Y. 568, 42 N. E. 8; Rankine v. Metzger, 69 App. Div. 264, 74 N. Y. Supp. 649; Greene v. Greene, 125 N. Y. 506, 26 N. E. 739, 21 Am. St. Rep. 743. Upon his death he assumed, in form, to appoint the college trustee in his place, and to authorize and empower it to take and hold the securities "as I now hold them in trust to presently pay out of the principal of the same" the $32,000, and to direct the college, as "his successor in the trust," to hold the "remaining securities," after paying the $32,000 out of the principal thereof, "in trust to pay out of the net income, counting from the date of" his death, the annuities therein enumerated, with the direction that the balance of the net income during the lives of the annuitants, and, after the death of the last survivor, the entire net income, be devoted to the maintenance of the Wallace Professorship of Rhetoric and Oratory. A bequest to a charitable corporation in form in trust, with directions to hold the corpus, and use the income in perpetuity for any authorized charitable use, does not create a strict trust, or constitute the corporation a trustee, or offend against the statute of perpetuities. Williams v. Williams, 8 N. Y. 525; Wetmore et al. v. Parker, 52 N. Y. 450; Bird v. Merklee, 144 N. Y. 544, 39 N. E. 645, 27 L. R. A. 423; First Presby. Ch. v. McKallor, 35 App. Div. 98, 54 N. Y. Supp. 740. It is a general rule that a charitable corporation cannot act as a trustee in a matter in which it has no interest, but, where it has an interest either in the principal or in the income, it may act as trustee for another or others having an interest in the whole or part of the income for life. Matter of Howe, 1 Paige, 214; Jackson v. Hartwell, 8 Johns. 422; Farmers' Loan & Trust Co. v. Cornell, 5 Barb. 613; Levy v. Levy, 33 N. Y. 124; Adams v. Perry, 43 N. Y. 487; Wetmore v. Parker, 52 N. Y. 458; Fosdick v. Hempstead, 125 N. Y. 581, 26 N. E. 801, 11 L. R. A. 715; Matter of Griffin, 167 N. Y. 71–79, 60 N. E. 284; Sherwood v. Am. Bible Soc., 4 Abb. Dec. 227; Sheldon v. Chappell, 47 Hun, 59; Currin v. Fanning, 13 Hun, 459. Words of trust are implied when necessary, and disregarded when unnecessary. Congregation Unitarian Soc. v. Hale, 29 App. Div. 396, 51 N. Y. Supp. 704; Bird v. Merklee et al., 144 N. Y. 544, 39 N. E. 645, 27 L. R. A. 423; Matter of Griffin, supra; Woodward v. James, 115 N. Y. 346, 22 N. E. 150. One cannot be trustee and beneficiary of the same identical estate, and where that has been attempted there is a merger of the legal and equitable title. Woodward v. James, supra. A trust was unnecessary as to the interest of the college. Under these rules, it took the corpus as owner for this particular charitable use, and not as trustee, notwithstanding the characterization by the settlor. By the same phraseology the college is declared to be trustee as to the annuities and as to the corpus and surplus income. There was no necessity for a trust for either, and I think none was intended. The income would likely at all times more than twice exceed the annuities. The college was obliged to hold and separately invest the property in perpetuity under its charter and the declaration of trust, and this is its duty with respect to the principal

of all of its property, unless otherwise specially authorized. Thus holding it is all that the settlor desired, and that is accomplished without the aid of a trustee. He then reserves the right to change the designation of beneficiaries other than the college, but in this connection he again states that the securities have been irrevocably settled on the college, and expressly provides that in no event shall it be required to pay, by reason of any such substitution of beneficiaries, more than the aggregate amount specified; and in the same sentence he significantly states as a reason for this limitation on the liability of the college, "my primary purpose in creating this trust being to fully and adequately endow a chair of Rhetoric and Oratory in said College."

A power of revocation, in whole or in part, is perfectly consistent with a valid trust, and in such case the trust continues until or unless revoked.   Van Hesse v. McKaye, 136 N. Y. 114, 32 N. E. 615; Rosenburg v. Rosenburg, 40 Hun, 91; Stone v. Hackett, Ex'r, et al., 12 Gray, 232.   The reservation of the power of appointment or of the right to substitute other beneficiaries might have rendered the instrument and the right intended to be conferred thereby to this extent void as to creditors, but no rights of creditors are presented.   It was not invalid as between the parties.   Although this rendered the disposition of those interests somewhat ambulatory, like a will, it was not an attempted testamentary disposition, nor did it prevent the right vesting in the beneficiaries, subject to the power which was never exercised. Matter of Bostwick, 160 N. Y. 489–492, 55 N. E. 208; Matter of Delano, 82 App. Div. 147–152, 81 N. Y. Supp. 762; Brown v. Spohr, 87 App. Div. 522, 84 N. Y. Supp. 995; Rosenburg v. Rosenburg, 40 Hun, 91; Van Hesse v. McKaye, 136 N. Y. 114, 32 N. E. 615; Van Cott v. Prentice, supra; Grafing v. Heilmann, 1 App. Div. 260, 37 N. Y. Supp. 253, affirmed 153 N. Y. 673, 48 N. E. 1104; Dickerson's Appeal, 115 Pa. 198–210, 8 Atl. 64, 2 Am. St. Rep. 547; Stocket v. Ryan, 176 Pa. 71, 34 Atl. 973.   Where, as here, property is disposed of in præsenti by a declaration of trust, so that title is intended to vest before, instead of, as in the case of wills, at, the death of the settlor, this constitutes a valid contract, even though possession does not pass until his death, or the enjoyment is contingent on the survivorship of another, and some of the features of the trust look to the distribution of property after the death of the settlor.   Gilman v. McArdle, supra; 1 Jarm. on Wills (Am. Ed.) 175; Sharp v. Hall, 86 Ala. 110, 5 South. 497, 11 Am. St. Rep. 28; 9 Am. & Eng. Enc. of Law, 91, note; Townsend v. Allen (Sup.) 13 N. Y. Supp. 73; Stone v. Hackett, supra.

It is claimed that the beneficiaries who were to be paid out of the corpus took directly under the declaration of trust, and that this constitutes a testamentary disposition.   I regard it quite clear, however, that the college took the securities subject to the payment, and on condition that it pay the specified beneficiaries, who were to receive their respective shares on the death of the settlor.   He declared himself a trustee not for these beneficiaries, but for the college.   In the codicil he declared that he had by this declaration of trust made present provision for the former legatees.   As he had given them nothing directly, this could only be true upon the theory that he had charged their interests upon the property which he had given to the college.   He di-

rected the college, and not his executors, to make the payments; and he provided that the college, and not his executors, should be entitled to the securities upon his death. He authorized the college to take immediate possession of the securities upon his death, and he authorized the trust company to deliver the securities directly to the college. He had, as has been seen, given it joint control. He even foresaw that some obstacle might arise to prevent the college obtaining possession of the securities, and, to insure its succeeding thereto, he authorized the executors, if necessary, to turn the securities over to the college, and to assign them to it, and in that event provided, in effect, that they should not be required to account to his estate therefor. Wallace could have made a voluntary settlement of these securities on the college on condition that it pay him the surplus income over $1,800 per annum during life, and the other beneficiaries at and after his death, making the amounts payable to them charges or liens upon the securities, without offending against either chapter 360, p. 607, of the Laws of 1860, or the statutes regulating the testamentary or other disposition of property; and the trust would have been irrevocable unless power of revocation was reserved. Van Hesse v. McKaye, supra; Geoffrey v. Heilmann, supra; Townsend v. Allen (Sup.) 13 N. Y. Supp. 73; Browne v. Murdock, 13 Abb. N. C. 360; Fellow's Appeal, 93 Pa. 470; Kraft v. Neuffer, 202 Pa. 558, 52 Atl. 100; Stone v. Hackett, supra; Lovett v. Farnham, 169 Mass. 1, 47 N. E. 246; Brown v. Mercantile Trust Co., 87 Md. 377, 40 Atl. 256. Excepting as to the trust created in himself during his life, which is fully explained on the theory of his special ability to handle the securities most profitably, may it not fairly be said that this is what he intended to do, and is not the declaration of trust susceptible of such construction, which will sustain it as a valid disposition of the entire property?

Of course, the mere fact that a trustee is willing to execute a trust, and that the beneficiaries consent thereto, will not justify withholding property from the heirs or next of kin or legatees or devisees of a settlor, if the trust be invalid and incapable of enforcement without such consent. Holland et al. v. Allcock, 108 N. Y. 312, 16 N. E. 305, 2 Am. St. Rep. 420. It does not follow, however, if part of a disposition of property under a trust in a will or declaration of trust be invalid, that the entire disposition or trust falls. The rule is that if the valid may be separated from the invalid, and given effect, "without maiming the general frame of the will, or the testator's substantial and dominant purpose" (Matter of Butterfield, 133 N. Y. 473, 31 N. E. 515), or if the primary or principal purpose can be given effect (Hascall v. King, 162 N. Y. 134, 56 N. E. 515, 76 Am. St. Rep. 302), although the invalid provisions, which must fall, relate to the same single trust, this will be done (Harrison v. Harrison, 36 N. Y. 543; Kennedy v. Hoy, 105 N. Y. 134, 11 N. E. 390; Savage v. Burnham, 17 N. Y. 561; Van Schuyver v. Mulford, 59 N. Y. 426; Benedict v. Webb, 98 N. Y. 460; Wetmore et al. v. Parker, 52 N. Y. 450; Van Horne v. Campbell, 100 N. Y. 287, 3 N. E. 316, 771, 53 Am. Rep. 166; Robert v. Corning, 89 N. Y. 225–241). The rule is otherwise where the invalid portions are an essential part of the disposition or trust as

an entity, and not separable.    Post v. Hover, 33 N. Y. 593; Dupre
v. Thompson, 4 Barb. 279–284; Underwood et al. v. Curtis et. al.,
127 N. Y. 523, 28 N. E. 585; Knox v. Jones, 47 N. Y. 389; Manice
v. Manice, 43 N. Y. 303.    Within these rules, hereinbefore dis-
cussed, as well as by virtue of contract right, I am of opinion that
the declaration of trust can be sustained as transferring title to the
college, even though otherwise it should be deemed to create an in-
valid trust for the annuitants.    The settlor has, as forcibly and
clearly as language could make it, declared it his primary and prin-
cipal purpose to endow the college, and this clearly appears by the
other evidence.    The annuities, at most, relate to less than half the
income on the securities in the beginning, and lessen as the an-
nuitants die.    I think, as has already been observed, that the col-
lege would be estopped from asserting invalidity, and that equity
could and should enforce the payment of these annuities.

4. If there was a strict statutory trust created for the annuitants,
which is not severable, and would be void, under our statute, on
account of suspending the power of alienation of part of the income
during the lives of the seven annuitants, still its validity in that
respect is to be determined by the law of Pennsylvania.    Assuming
that this is the only infirmity in the declaration of trust, it is clear
that the settlor contemplated that immediately upon his death the
college should take possession of the securities, not through the ex-
ecutors or any proceedings in the surrogate's or other courts here,
but by virtue of right and title conferred by the declaration of trust.
The college was not required to leave the securities here.    On the
contrary, I think, from the direction to the trust company to sur-
render them to it, the settlor contemplated that they should be re-
moved from the state.    The college was a foreign corporation, and
its seat was in a foreign state.    It owned, held, and invested its
personal property there, and was accountable to the laws of Penn-
sylvania, and subject to the supervision of its courts.    The profes-
sorship was established and was to be maintained there.    The sur-
plus income from the securities during the life of the annuitants,
and the whole of it thereafter, was to be applied to this particular
use there.    Five of the annuitants resided in Pennsylvania, and
only one here.    The trust, if any, therefore, was to be executed in
that state. Our statute forbidding the suspension of the absolute
ownership of personal property for more than two lives in being
at the date of the instrument containing the limitation or condition
(section 2, Personal Property Law; chapter 417, p. 507, Laws 1897)
was designed to prevent perpetuities or accumulations of personal
property in this state, and not in a foreign state or country, even
though the settlor was domiciled here.    Hope v. Brewer et al., 136
N. Y. 126–138, 32 N. E. 558, 18 L. R. A. 458.    The law of the domi-
cile of the settlor governs as to the execution and construction of
the instrument and his competency to dispose of the property, and
hence a disposition in violation of chapter 360, p. 607, of the Laws
of 1860, for a foreign trust, as well as for a domestic trust, would
be void, but the validity of a trust to a foreign corporation would,
as regards perpetuities or accumulations, depend on the foreign law.

McKeown v. Officer (Sup.) 6 N. Y. Supp. 201; Cong. Unitarian
Soc. v. Hale, supra; Despard v. Churchill, 53 N. Y. 192; Chamber-
lain v. Chamberlain, 43 N. Y. 432–435. Another rule—not im-
portant here, however—is that where a trust of personal property
would be valid under the law of the domicile of the donor, settlor,
or devisor, and it is to be administered in a foreign state, the courts
of that state will administer it on grounds of comity, unless against
public policy or forbidden by law, even though the trust would not
be valid under the foreign law. Dammert v. Osborn et al., 141 N.
Y. 564, 35 N. E. 1088; Cross et al. v. U. S. F. Co. et al., 131 N. Y.
330, 30 N. E. 125, 15 L. R. A. 606, 27 Am. St. Rep. 597; Cong. Uni-
tarian Soc. v. Hale, supra. Under the law of Pennsylvania, it
seems clear that this was a charitable use, and the college had ca-
pacity to take, and it is not affected by the statute against perpetui-
ties. Charter Jefferson College, c. 4; Laws Pa. 1802 (3 Smith's
Laws, p. 478); Charter Washington College, approved March 28,
1806 (4 Smith's Laws, p. 335); act consolidating both colleges, ap-
proved March 4, 1865 (P. L. 265); an act relating to estates held
for charitable uses, approved May 9, 1889 (P. L. 173); Yard's Ap-
peal, 64 Pa. 95; Dickerson's Appeal, 115 Pa. 198, 8 Atl. 64, 2 Am.
St. Rep. 547. At common law annuities were a charge simply upon
the estate, or upon rents and profits, and were alienable. Cochrane
v. Schell, 140 N. Y. 516–532, 35 N. E. 971. No statute of Pennsyl-
vania has been proved, prohibiting the alienation of annuities, and
therefore the common law would be deemed to prevail.

5. Even if the law of New York governs on the question as to
whether there is a strict statutory trust as to the annuitants, and its
validity, still the declaration of trust as to the annuities would be
valid and enforceable. It has already been shown that a gift in a
devise to a charitable corporation is not within the laws of New
York prohibiting perpetuities, and that such a corporation, when
it takes an interest, may take the same subject to a lien or charge
of annuities, and may in such case act as trustee for other ben-
eficiaries.

The only points that remain to be considered are whether these
annuities were intended as a mere lien or charge upon the income,
or whether a strict statutory trust was created for the annuitants,
and, if so, whether it suspended the absolute ownership of the in-
come for more than two lives in being, and whether this would
render it invalid. It is manifest that no trust was necessary or
intended as to the college itself, and that, if it were, the estates as
the interests of the college would merge. The settlor therefore
must have intended that the college should invest and reinvest these
securities during the lives of the annuitants precisely as it would
thereafter or if there were no annuitants. The provision for the
annuitants therefore did not affect its right to alien and charge the
securities, or control and manage the use of the corpus. Annuities,
even though, for convenience, payable out of the income, may be
merely a lien or charge, in which case they are alienable, as at com-
mon law, or a strict trust of rents, issues, and profits may be cre-
ated for the payment of annuities for support of a beneficiary, in

which case they are inalienable by statute in our state.  Hawley v. James, 16 Wend. 61; Frazer v. Hoguet, 65 App. Div. 192–200, 72 N. Y. Supp. 840; Cochrane v. Schell, 140 N. Y. 516, 528–530, 35 N. E. 971; Lang v. Ropke, 5 Sandf. 363; Rothschild v. Roux, 78 App. Div. 282, 79 N. Y. Supp. 833; Buchanan v. Little, 154 N. Y. 147, 47 N. E. 970; Dunham v. Deraismes, 165 N. Y. 65, 58 N. E. 789; Booth v. Baptist Ch., 126 N. Y. 215, 28 N. E. 238; Clark v. Clark, 147 N. Y. 639, 42 N. E. 275; section 3, c. 417, p. 508, Laws 1897, as amended by chapter 87, p. 239, Laws 1903.  If we were to adopt the construction that a strict trust was intended, it might be invalid, and the manifest desire of the settlor to provide for the beneficiaries might fail altogether.  It is clear that the settlor intended that the beneficiaries should receive the annuities.  It is not clear that he intended that they should not have the right to assign them.  It is manifestly more in accordance with the intention of the testator that they should receive the annuities, even if assignable, than that they should receive nothing on account of a technical construction of the words of trust employed in the declaration of trust. The fact that he directed the payment of the annuities out of the income does not illuminate this point.  If he had not so limited it, the law would have done so, for such institutions may not safely encroach upon the principal of the endowment.  Booth v. Baptist Ch., supra; Wetmore v. Parker, 52 N. Y. 450.  They were not to receive the entire income, but only sufficient to satisfy the respective annuities.  It is unreasonable to suppose that the time would ever come when the annuities would consume it all.  The annuities, at their maximum, would be only about 2 per centum on the value of the securities, and less than one-half the income on the remainder after paying the charges presently payable at the rate previously earned.  He made no provision for the use of the principal for the maintenance of the chair in the event that the income should be insufficient.  He clearly contemplated that the income should be sufficient to pay the annuities and to maintain the chair.  It is evident that he intended, as he said, that this professorship should be conducted in a modest way at first, and extended as the college came into the enjoyment of the full income.  He merely meant that, holding and investing these securities in these proceeds separately, it should from the income, when received, pay the annuitants.  I am therefore of opinion that the instrument is susceptible of the construction that no strict, statutory trust was intended, and that the securities were given to the college subject to the payment, or upon condition that it pay the annuities out of the income, when received, which will sustain its title; and this view is sustained by precedents.  Booth v. Baptist Church, supra; Buchanan v. Little, 154 N. Y. 147, 152, 47 N. E. 970; Clark v. Clark, 147 N. Y. 639, 42 N. E. 275; Tabernacle Ch. v. Fifth Ave. Ch., supra; Chaplin on Express Trusts & Powers, §§ 29, 30, 32, 33, 160. The case, in this aspect, is distinguishable from those not relating to a trust for a charitable use, where an express trust was created, and the legal title passed to trustees to collect and pay over the income, and the remainder after the expiration of the trust was vested

only contingently in others.   See Herzog v. Title Guaranty & Trust Co., 177 N. Y. 86, 69 N. E. 283, 67 L. R. A. 146.

There is room for argument that even if a single strict statutory trust had been created in the college, and it had been appointed trustee for the benefit of these annuitants, and in such circumstances that the trust continued until the death of the last survivor, being the expiration of the seven lives in being, and in such manner that the annuities would not be assignable, yet the trust would be valid, because the statute prohibiting the suspending of the absolute ownership for more than two lives in being is not applicable to charitable corporations taking for a charitable use with incidental trusts; and there is some support in the authorities for this view, although I find no decisive adjudication thereon.   If such statute be not applicable to either the principal or the income, so far as held and owned by the college, although in perpetuity, it may be plausibly urged that it should not be applicable to all or part of the income given to another for a limited period, either of years or lives; but it could, I think, be urged with much force that the exemption of charitable uses from the statute against perpetuities has been ingrafted by the courts because the statute in such case is manifestly inapplicable (Allen v. Stevens, 161 N. Y. 122, 55 N. E. 568), and, were it applied, it would defeat the object for which such corporations have been called into existence, and that such exemption should be confined to the interest transferred, devised, or bequeathed to the charitable use, and not extended to the interests in which others are the beneficiaries.   In Tabernacle Ch. v. Fifth Ave. Ch., supra, there was in form a direct trust created in one charitable corporation, of the entire income to another for a period of years, which was sustained; and, although the precise ground is not specified, this could only be upon the theory either that the statute against perpetuities did not apply, or that this was a mere charge, for a suspension for years is for more than two lives in being.   Underwood v. Curtis, 127 N. Y. 523, 28 N. E. 585.   In Booth v. Baptist Ch., supra, a trust in form of a single fund was created in a charitable corporation, with directions to pay annuities for three lives in being, and it was sustained.   This could only be upon one or the other of these theories.   The opinion rather indicated that the decision went upon the theory that it was a charge.

I am therefore of opinion that the decisions which seem to indicate that the statute against perpetuities is not applicable to trusts of this nature really rest on the theory, which I consider sounder and better, that no strict statutory trust was created, and that the annuities constituted a lien or charge upon income merely.

6. I am of opinion, however, that if this be a strict statutory trust for the annuitants, and the annuities be not assignable, the trust could be sustained upon the theory that, although the securities constituting the trust fund are not severed or severable, yet the trust is severable as to the interests of the respective annuitants, so that there would be a suspension of the power of alienation of that part of the income accruing to each annuitant only during his life, which would not be a violation of the statute; and upon this

point it is important to bear in mind that these are separate annuities, there not being a community of interest, and that the college, and not the survivors, succeeds to that part of the income formerly enjoyed by a deceased annuitant. Harrison v. Harrison, 36 N. Y. 543; Savage v. Burnham, 17 N. Y. 561, 570, 571; Lorillard v. Coster, 5 Paige, 226–230; Stevenson v. Lesley, 70 N. Y. 512–516; Manarque v. Manarque, 80 N. Y. 320–324; Vanderpoel v. Loew, 112 N. Y. 167, 179, 180, 19 N. E. 481. See, also, Steinway v. Steinway, 163 N. Y. 183, 196, 197, 57 N. E. 312.

It is manifest that the facts could not be changed upon a new trial, and the error not being in the findings, but in the conclusions of law, the judgment should be reversed, with separate bills of costs to the appellants appearing separately against the respondent, and judgment directed adjudging the validity of the declaration of trust, and directing the delivery of the securities to the college thereunder, subject to the charges specified, and for the immediate payment to each of the appellants W. N. Wallace and Benjamin E. Lillie, or their attorneys, by the college, out of the principal of the securities, of the sum of $5,000, and income thereon from May 2, 1903, the date of the death of the settlor, and dismissing the complaint upon the merits, with separate bills of costs to the appellants who appeared separately upon the trial. All concur.